UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE №  00-6309-CR-SEITZ

UNITED STATES OF AMERICA,

*Plaintiff,*

VS.

DAVID MORGENSTERN,

*Defendant.*
_____/



### DEFENDANT DAVID MORGENSTERN'S
### UNOPPOSED MOTION FOR CONTINUANCE

Defendant, **DAVID MORGENSTERN**, by and through undersigned counsel, hereby moves this Honorable Court to continue the trial date which is currently set for February 11, 2002, and in support thereof states the following:

1. Undersigned counsel has conferred with Assistant United States Attorney Brian McCormick. Mr. McCormick states that the government has no objection to the Court granting a reasonable continuance.

2. The Defendant is currently set for trial in a fifty-five-count indictment wherein the Defendant is charged in approximately thirty-one counts. This is a complex indictment charging RICO, money laundering, wire fraud and mail fraud. There are other counts charging other defendants with other crimes, which this Defendant is not involved.



1

3. The Defendant was arrested October 30, 2000. Sometime in December 2000 Defendant was appointed CJA counsel. As this Court is well aware, there were problems with discovery, copies of documents, and problems among the various attorneys representing some of the defendants.

4. On November 6, 2001, Defendant's original CJA counsel withdrew from further representation of the Defendant. Undersigned counsel was appointed thereafter to represent the Defendant and was advised this case was set for trial for February 11, 2002. Shortly after being appointed, undersigned counsel conferred with original CJA counsel. Counsel further requested that the file be provided to the undersigned forthwith. It was not until December 13, 2001 that the original CJA counsel made the file available.

5. This discovery consisted of approximately 20,000 documents. Some of the documents include pleadings but the majority of the documents are documents relating to the underlying charges of the RICO, money laundering, wire fraud and mail fraud.

6. Approximately one third of the documents were organized in a fashion so that documents could be properly examined. However,

(a) The majority of the documents still have to be cataloged, organized and fully examined to be able to be used in preparing the defense for the Defendant;

(b) No index of the documents was provided. In sum, the 20,000 documents have few labels and no direction to determine which count of the indictment various documents apply to;

(c) There is a plethora of Rule 404(b) evidence the government intends to use at this trial. These documents are mixed with other discovery. Thus, the defense needs to

examine all these documents to determine which documents are part of the government's case in chief and which documents the government intends to use as 404(b) evidence.

7. Many of the discovery documents consist of checks, the daily recordings, and depository receipts of check cashing stores in relation to their various banking depositories. We have reviewed only a faction of these documents to date.

8. There are also wiretap transcripts. Undersigned counsel has not had an opportunity to determine whether the government complied with the necessary minimization requirements to determine whether there should be litigation over whether the wiretaps should be admissible. This is absolutely critical to the Defendant's defense and must be done in order to render effective representation. Undersigned counsel has not had sufficient time to listen to the wiretaps, review the wiretap transcripts to determine the reliability of the transcripts or if all CD ROMS have been in fact transcribed. The review of the wiretaps and the related materials has not yet begun.

9. The review of documents relating to the money laundering and RICO is very time consuming. Counsel has worked almost every day on this case, and the Defendant, David Morgenstern, has been extremely cooperative, helping in every way possible. Nevertheless, undersigned counsel has reviewed only approximately 8,000 pages of discovery thus far.

10. Assistant United States Attorney Brian McCormick informed undersigned counsel during the week of January 14, 2002 that there is new discovery in this case that the government intends to use which originates from the Bahamas. Although counsel timely ordered these documents from International Legal Imprints, counsel is still waiting for them to be made available. Assistant United States Attorney Brian McCormick

indicated that these 1,337 documents are devastating to the Defendant's case. There may be two additional volumes containing unknown number of pages, which has not been released. Thus, it is unknown as to the relevancy of any of these documents to the government's case or to the Defendant's defense.

11.    As this Court is also well aware there are at least seventy boxes of documents and perhaps more from the so-called "South Carolina investment fraud." It is believed that these documents will assist the Defendant in presenting his defense. These documents need to be reviewed by the Defendant and counsel. In light of the fact that we have been spending our time reviewing the documents that we received in discovery this has not yet been done. It is believed these documents may benefit the Defendant by showing Defendant is not mentioned in the South Carolina investment fraud. Furthermore, it is believed that these documents contain omissions concluding that David Morgenstern had no knowledge, involvement or participation with the South Carolina investment fraud. These documents must be reviewed, and for now, they must be reviewed at the Federal courthouse in Fort Lauderdale. Copies are not available. Obviously, the government is not advising which of the documents may be helpful to the Defendant. Thus it is the Defendant's obligation to review these documents where they are presently located. Time is necessary so this may be done in a competent manner on behalf of the Defendant.

12.    The defense needs additional time to assess which expert witnesses are necessary for the presentation of the defense. The Defendant intends to present a defense in this case. The Defendant wishes to present testimony and evidence that support his belief that his business fell within ordinary and customary practices permissible abroad.

The defense must engage these expert witnesses who are in the area of management of offshore international, trust and business undertakings, as well as certain inter- and intra-jurisdictional issues, since the Defendant did little business in the U.S. but operated throughout Europe and elsewhere. Expert testimony is necessary to opine on corporate matters which permit taking advantage of opportunities while still being in compliance with the business, banking and accounting laws of a diverse set of nations. In sum, expert testimony is necessary to determine the following:

    a) Whether any of the corporations, whether formed by the Defendant or not, which operated under the laws of other nations, in fact did so in full compliance with the laws of that land.

    b) Whether there is any conflict between foreign laws and the laws of the U.S. and if these corporations in fact operated in compliance with the laws of the country of formation, how such rightful operation could be wrongly interpreted under U.S. laws.

    c) Whether the Defendant and these certain foreign corporations followed generally accepted accounting practices in their respective countries of operation, as well as cross-jurisdictionally into other foreign countries, and thus further complied with governing law associated with their business.

    d) Whether the diverse bank secrecy laws, fraud and money laundering statues, of these respective foreign jurisdictions vary materially from U.S. States laws and whether compliance by non-U.S. entities as required under the laws of these foreign nations may be in opposition to U.S. laws.

e) Whether the Defendant's actions in non-U.S. entities was consistent with banking, trading, investment, fiduciary and trustee practices in each country including whether he fulfilled his obligations and responsibilities for such an operation under the confines of prevailing law.

13. Again, after reviewing approximately 8,000 documents we have not yet found any documents that correspond to particular aspects of the indictment. Moreover, it is impossible to prepare a defense at this point before examining all documents to determine which documents are relevant to various allegations in the indictment. Although counsel has had the file for six weeks, it is impossible to have reviewed all the documents to determine which documents apply to which allegation in the indictment. Moreover, it has also been impossible to determine how some documents are relevant before going through all of the documents.

14. Again, many documents involve check-cashing stores. These stores appear to have been legally permissible state-licensed check accepting and cash or cash equivalent, meaning money orders, cashier's checks and wire transfers, tendering depositories acting "as banks" for thousands of clients over the course of many years, at least back into 1996. Expert testimony is necessary to determine the usual course and conduct of check cashing stores. It appears that from the documents reviewed thus far, these check-cashing stores were conducting legitimate business activities. However, without reviewing all the documents it is impossible to make a final conclusion. If there is discovery contrary to these facts, then the defense has not yet reached this discovery as yet in the limited amount of time we have had to examine the discovery.

15. Again, with respect to the RICO allegations, regarding the Defendant, in the limited amount of discovery we have examined, we find thus far that the Defendant relied upon the receipt of funds duly and legally processed through FDIC-insured, Federal Reserve-licensed banks, always receiving the funds in the form of Federal Reserve-generated wire transfers and never in the form of any checks for deposit. This appears to be a legal action. We have not yet seen documents that reflect any illegality with respect to this matter.

16. Documents have not been fully examined by a defense forensic accounting expert and cannot be until we review all the documents to determine which documents need to be reviewed by an expert witness. Moreover, CJA approval is necessary before the hiring of an expert witness.

17. The following must be done to render effective representation of the Defendant:

a) There are foreign documents located in several countries, which need to be examined. This is a particularly sensitive request from the defense. The defense requests an opportunity to address the court in-camera regarding these matters. While the Defendant is not in possession of these documents, he is prepared to advise the Court in-camera of the documents requested, the last known location of these documents and the relevance they have to this case.

b) There are actual witnesses that the defense needs time to assemble including expert witnesses and witnesses to refute allegations brought forth by the government. Many of these potential witnesses are outside the United States. Additional

time is necessary to contact these witnesses, interview these witnesses and determine whether these witnesses are willing to return to the United States to testify. These witnesses, in addition to some located in the United States, some in foreign countries. The defense requests to present to the court in-camera a list of these witnesses along with their proposed testimony and why their testimony is relevant to the defense.

       c)    Additional time is necessary so that counsel can confer with the Defendant to determine which of the specific witnesses need to interviewed versus which will be actually called at the trial to testify. Counsel has not had an adequate opportunity to confer with any of these witnesses as the primary emphasis has been placed on reviewing documents to determine which documents apply to which counts of the indictment and to prepare and understand how the government is going to prove the various counts of the indictment.

18.    This motion is made in good faith and not for purpose of delay.

19.    The Defendant moves the court to set a status conference so the parties may discuss these issues with the court.

**WHEREFORE,** the Defendant respectfully prays that this Honorable Court will grant the relief sought herein.

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was furnished to Assistant United States Attorneys Diana Fernandez and Brian McCormick, via fax and U.S. Mail, 500 East Broward Boulevard, Suite 700, Fort Lauderdale, Florida 33394, William Norris, Esquire, Attorney for Fred Morgenstern, 7685 Southwest 104th Street, Suite 104,

Miami, Florida 33156, Emanuel Perez, Esquire, Attorney for Joseph Silvestri, 2121 Ponce de Leon Boulevard, Suite 920, Coral Gables, Florida 33144, David Tarlow, Esquire, Attorney for Frederick Scarola, 801 Brickell Avenue, Suite 1901, Miami, Florida 33132, Jon May, Esquire, Attorney for Charles Clay, 200 East Broward Boulevard, Suite 1210, Fort Lauderdale, Florida 33301 , Philip Horowitz, Esquire, Attorney for Mark Weiss, 12651 South Dixie Highway, Suite 328, Miami, Florida 33156, on this 24th day of January, 2002.

Respectfully submitted,

SCOTT W. SAKIN, P.A.
CJA Counsel for Defendant
1411 N.W. North River Drive
Miami, Florida 33125
Tel: (305) 545-0007

By: _____
SCOTT W. SAKIN
Florida Bar Nº 349089