

FILED BY _____ D.C.

2003 MAR 14  PM 4: 17

CLARENCE MADDOX
CLERK U S DIST. CT.
S.D. OF FLA - FTL

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRCIT OF FLORIDA**

**CASE NO 00-6309-CR-DIMITROULEAS**
**02-60101-CR-DIMITROULEAS**

UNITED STATES OF AMERICA,

      PLAINTIFF,

VS.

 DAVID MORGENSTERN,

      DEFENDANT,

_____/

### MOTION TO WITHDRAW PLEA-MEMORANDUM OF LAW

     COMES NOW THE defendant, DAVID MORGENSTERN, by and through his undersigned attorney and files this his Motion to Withdraw Plea in the above styled matters pursuant to Federal Rules of Criminal Procedure, Rule 32(e) and would state unto the Court as follows:

     1.  The Defendant was charged by Indictment in 00-6309-CR-Dimitrouleas and by Information in 02-601001-CR-Dimitrouleas in the Southern district of Florida. He was also charged by Indictment in 8:00-27-CR-Anderson Division in South Carolina. That the original indictment 00-6309 was a result of an extensive investigation of organized crime in the South Florida area. The resulting connection to the Womack Indictment in South Carolina and the organized crime investigation lead to the defendant and his subsequent indictment. The Defendant was charged with Rico, money laundering, wire fraud and mail fraud, etc. The defendant had no connection to the organized crime aspect of the indictment.



2.   As a Result of the investigation thirteen (13) individuals were arrested and charged in the 00-6309 Indictment, which was returned in October 24, 2000. A Superseding Indictment was returned on January 30, 2001. A Second Superseding indictment was returned on August 14, 2001. CJA attorney Ana Jhones was appointed by the court on December 20, 2000 to represent the defendant. She was attorney of record until discharge on November 6, 2001 as a result of a conflict. A second CJA attorney Scott Sakin was appointed by the court on December 3, 2001 to represent the defendant. It appears that the transmission of discovery materials form Jhones to Sakin took one month. The investigation produced 10s of thousands documents and untold taped conversations as a result of an authorized wire intercept. These documents and tapes were scattered between South Florida and South Carolina. There were 110 boxes of discovery in South Carolina that was discovered by attorney John Howe. The Court ordered the government to produce and index by November 22, 2001. These boxes were in addition to the voluminous discovery being held in South Florida. On January 14, 2002 the government informs defense counsel that there is additional discovery (see Exhibit A).

3.   On January 24, 2002 defense counsel Sakin filed on behalf of the defendant a motion to continue trial date (Exhibit A) In this request for a continuance attorney Sakin tells the court that he is not prepared for trial. The Court based upon counsel's representations the he is unprepared for trial continues the matter until May 6, 2002.

4.   That on April 23, 2002 defendant filed a *pro se* motion to continue the trial based upon defense counsel being unprepared for trial (Exhibit B) A hearing was held and the trial was continued until May 22, 2002. During the time between April 24 and May 22 attorney Sakin was involved in a capital murder case in state court. On May 21,

2002 this court was informed that the state case was a mistrial after spending the last 12 days in trial. During the preparation for the capital case the defendant alleges that Mr. Sakin did not prepare for his case. The defendant was informed that he either pleads today (May 21) or goes to trial tomorrow.

5.   The defendant contents that he was forced to either enter into a plea agreement with the government or go to trial with an unprepared attorney representing him. Defendant was not advised of the options available to him. He was never advised that there would be appellate review of the trial if he were convicted. One of the points on appeal could be competency of counsel during trial. The plea that was entered by the defendant was based upon misinformation, fear and uncertainty. The defendant contends that he would have not taken a plea and gone to trial to profess his innocence if he had been properly advised.

6.   The position of the defendant is spelled out in an affidavit (Exhibit C) that is self explanatory and required no further comment

## MEMORAMDUM OF LAW

The defendant does not have an absolute right to withdraw his plea of guilty and he has the burden of showing a fair and just reason for withdrawal. *United States v. Ubakanma*, 215 F.3d 421 (4th Cir. 2000). In regard to the ability to withdraw a plea of guilty, the court has great discretion in allowing the defendant. This discretion granted to district court should be construed liberally. *United States v. Jones*, 168 F.3d. 1217 (10th Cir. 1999). The court should treat a defendant seeking to withdraw a plea of guilty before sentencing more liberally than someone seeking to withdraw a plea after sentencing. *United States v. Embrey*, 250 F.3d.1181 (8th cir. 2001).

Factors to consider in a Federal Rules of Criminal Procedure, Rule 32(e) motion to withdraw of plea are:

1.  The amount of time lapsed between the plea and motion to withdraw it;

2.  The reason for failing to move to withdraw earlier;

3.  Whether defendant has maintained his innocence;

4.  The circumstances underlying the guilty plea;

5.  Whether assistance of counsel was provided in decision to enter plea;

6.  Whether the plea was knowing and voluntary;

7.  Defendant's nature and background;

8.  Defendant's sophistication with the criminal justice system;

9.  Potential prejudice to government by withdrawal of plea;

10.  Whether the withdrawal would inconvenience the court and waste judicial resources.

The defendant need not meet each and every one the above factors in considering whether to grant the motion to withdraw his plea. Obviously, items 1, 7, 8, 9 and 10 appear to work against the defendant and the government would so indicate.

In answer to item 1, there was a Rule 20 when the case was transferred to South Carolina to disposition with the case there. The defendant entered into discussions with the government to provide substantial assistance and it was not until negotiations broke down did the defendant attempt to withdraw his plea. The defendant attempted to address that issue with CJA attorney Jessica Salvini who was his second appointed attorney in South Carolina. The time lapse would not have occurred but for the transfer. As for items

7, 8, 9 and 10 there is no question that these work against the defendant and I assume will be addressed by the government of the court.

The central issue that must be addressed in the motion to withdraw the plea is whether the plea was knowingly, voluntarily and intelligently done by the defendant at the time that the plea was taken. The defendant contents that through out the whole trail proceeding, he had inadequate representation both in Florida and South Carolina. That short-comings in the legal representation lead him to plea to criminal charges that he was not guilty of. A plea of guilty is constitutionally valid if and only if it "represents a voluntary and intelligent choice among alternate courses of action open to the defendant." *Hill v. Lockhart,* 474 U.S. 52, 56, 106 S. Ct. 366, 88 L.Ed.2d 203 (1985) The Rule 11 hearing where the plea was entered on May 21, 2002 on its face meets all the requirements necessary to satisfy the knowingly, voluntarily and intelligently aspects of the plea. But, the Court must or should look into the background of the case to determine if the words uttered at the time of the plea were meaningful or merely a defendant parroting answers to question knowing that there was no hope. While Rule 11 governs the validity of a plea of guilty, Rule 32(e) provides that a plea of guilty be withdrawn if the defendant demonstrates that the interest of justice and fairness so require.

The course of events that lead up to the plea is well documented. The court was fully aware of the request for continuances by defense counsel and ultimately by the defendant *pro se* on January 24, 2002 and April 23, 2002. Each time in the motion for continuance, the motion spelled out unpreparedness. Whether this was due to counsel or the time frame is inconsequential. The case was not prepared for trial. A plea based upon advise of counsel that is not prepared for trial (whether it is he fault or a time factor)

"falls below the level of reasonable competence such that a defendant does not receive effective assistance." *United States v. Loughery,* 908 F. 2d 1014, 1019 (D.C. Cir. 1990) If the plea is based upon that advise it is neither voluntary or intelligent. *United States v. Taylor,* 139 F.3d 929 (D.C. Cir.1998).

Accordingly, *Strickland v. Washington,* 466 U.S. 668,687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) to court established a two prong standard. The defendant must show: (1) that his counsel's performance 'fell below an objective standard of reasonableness by identifying specific 'acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment; and (2) "that there is a reasonable probability that, but for counsel's errors, the defendant would not have pleaded guilty and would have insisted on going to trail. If these two prongs are not met, it undermines the confidence in the judicial system.

It seems inconceivable that legal expertise can be based upon incomplete information. Failure to prepare for trial whether counsel thinks that the case will result in a plea violates his responsibility to his client. The defendant in his affidavit sets out sufficient grounds to establish a fair and just reason for this court to grant his motion to withdraw his plea.

WHEREFORE the defendant requests that this honorable Court grant his Motion to Withdraw his Pleas of Guilty.

Respectfully submitted,

LAW OFFICES OF BRIAN R. MCCOMB, PA
3458 S.E. DIXIE HIGHWAY
STUART, FLORIDA 34997
(772) 781-0069 FAX 223-0123

I HEREBY CERTIFY that a true and correct copy of this pleading was mailed to Brian McCormick/Diana Fernandez at the Untied States Attorney's Office 500 E. Broward Blvd. Suite 700 Ft. Lauderdale, Florida 33394-3002 and Michael J. Rosen 2400 S. Dixie Highway Suite 105 Miami, Florida 33133 this the 14th day of March 2003.

BRIAN R. MCCOMB 174866

# EXHIBIT A

**EXHIBIT "A"**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE Nº  00-6309-CR-SEITZ

UNITED STATES OF AMERICA,

       *Plaintiff,*

VS.

DAVID MORGENSTERN,

       *Defendant.*

_____/

## <u>DEFENDANT DAVID MORGENSTERN'S</u><br><u>UNOPPOSED MOTION FOR CONTINUANCE</u>

    Defendant, **DAVID MORGENSTERN,** by and through undersigned counsel, hereby moves this Honorable Court to continue the trial date which is currently set for February 11, 2002, and in support thereof states the following:

    1.    Undersigned counsel has conferred with Assistant United States Attorney Brian McCormick. Mr. McCormick states that the government has no objection to the Court granting a reasonable continuance.

    2.    The Defendant is currently set for trial in a fifty-five-count indictment wherein the Defendant is charged in approximately thirty-one counts. This is a complex indictment charging RICO, money laundering, wire fraud and mail fraud. There are other counts charging other defendants with other crimes, which this Defendant is not involved.

3.    The Defendant was arrested October 30, 2000. Sometime in December 2000 Defendant was appointed CJA counsel. As this Court is well aware, there were problems with discovery, copies of documents, and problems among the various attorneys representing some of the defendants.

4.    On November 6, 2001, Defendant's original CJA counsel withdrew from further representation of the Defendant. Undersigned counsel was appointed thereafter to represent the Defendant and was advised this case was set for trial for February 11, 2002. Shortly after being appointed, undersigned counsel conferred with original CJA counsel. Counsel further requested that the file be provided to the undersigned forthwith. It was not until December 13, 2001 that the original CJA counsel made the file available.

5.    This discovery consisted of approximately 20,000 documents. Some of the documents include pleadings but the majority of the documents are documents relating to the underlying charges of the RICO, money laundering, wire fraud and mail fraud.

6.    Approximately one third of the documents were organized in a fashion so that documents could be properly examined. However,

(a)    The majority of the documents still have to be cataloged, organized and fully examined to be able to be used in preparing the defense for the Defendant;

(b)    No index of the documents was provided. In sum, the 20,000 documents have few labels and no direction to determine which count of the indictment various documents apply to;

(c)    There is a plethora of Rule 404(b) evidence the government intends to use at this trial. These documents are mixed with other discovery. Thus, the defense needs to

examine all these documents to determine which documents are part of the government's case in chief and which documents the government intends to use as 404(b) evidence.

7.    Many of the discovery documents consist of checks, the daily recordings, and depository receipts of check cashing stores in relation to their various banking depositories. We have reviewed only a faction of these documents to date.

8.    There are also wiretap transcripts. Undersigned counsel has not had an opportunity to determine whether the government complied with the necessary minimization requirements to determine whether there should be litigation over whether the wiretaps should be admissible. This is absolutely critical to the Defendant's defense and must be done in order to render effective representation. Undersigned counsel has not had sufficient time to listen to the wiretaps, review the wiretap transcripts to determine the reliability of the transcripts or if all CD ROMS have been in fact transcribed. The review of the wiretaps and the related materials has not yet begun.

9.    The review of documents relating to the money laundering and RICO is very time consuming. Counsel has worked almost every day on this case, and the Defendant, David Morgenstern, has been extremely cooperative, helping in every way possible. Nevertheless, undersigned counsel has reviewed only approximately 8,000 pages of discovery thus far.

10.    Assistant United States Attorney Brian McCormick informed undersigned counsel during the week of January 14, 2002 that there is new discovery in this case that the government intends to use which originates from the Bahamas. Although counsel timely ordered these documents from International Legal Imprints, counsel is still waiting for them to be made available. Assistant United States Attorney Brian McCormick

3

indicated that these 1,337 documents are devastating to the Defendant's case. There may be two additional volumes containing unknown number of pages, which has not been released. Thus, it is unknown as to the relevancy of any of these documents to the government's case or to the Defendant's defense.

11.    As this Court is also well aware there are at least seventy boxes of documents and perhaps more from the so-called "South Carolina investment fraud." It is believed that these documents will assist the Defendant in presenting his defense. These documents need to be reviewed by the Defendant and counsel. In light of the fact that we have been spending our time reviewing the documents that we received in discovery this has not yet been done. It is believed these documents may benefit the Defendant by showing Defendant is not mentioned in the South Carolina investment fraud. Furthermore, it is believed that these documents contain omissions concluding that David Morgenstern had no knowledge, involvement or participation with the South Carolina investment fraud. These documents must be reviewed, and for now, they must be reviewed at the Federal courthouse in Fort Lauderdale. Copies are not available. Obviously, the government is not advising which of the documents may be helpful to the Defendant. Thus it is the Defendant's obligation to review these documents where they are presently located. Time is necessary so this may be done in a competent manner on behalf of the Defendant.

12.    The defense needs additional time to assess which expert witnesses are necessary for the presentation of the defense. The Defendant intends to present a defense in this case. The Defendant wishes to present testimony and evidence that support his belief that his business fell within ordinary and customary practices permissible abroad.

The defense must engage these expert witnesses who are in the area of management of offshore international, trust and business undertakings, as well as certain inter- and intra-jurisdictional issues, since the Defendant did little business in the U.S. but operated throughout Europe and elsewhere. Expert testimony is necessary to opine on corporate matters which permit taking advantage of opportunities while still being in compliance with the business, banking and accounting laws of a diverse set of nations. In sum, expert testimony is necessary to determine the following:

a)     Whether any of the corporations, whether formed by the Defendant or not, which operated under the laws of other nations, in fact did so in full compliance with the laws of that land.

b)     Whether there is any conflict between foreign laws and the laws of the U.S. and if these corporations in fact operated in compliance with the laws of the country of formation, how such rightful operation could be wrongly interpreted under U.S. laws.

c)     Whether the Defendant and these certain foreign corporations followed generally accepted accounting practices in their respective countries of operation, as well as cross-jurisdictionally into other foreign countries, and thus further complied with governing law associated with their business.

d)     Whether the diverse bank secrecy laws, fraud and money laundering statues, of these respective foreign jurisdictions vary materially from U.S. States laws and whether compliance by non-U.S. entities as required under the laws of these foreign nations may be in opposition to U.S. laws.

e)   Whether the Defendant's actions in non-U.S. entities was consistent with banking, trading, investment, fiduciary and trustee practices in each country including whether he fulfilled his obligations and responsibilities for such an operation under the confines of prevailing law.

13.   Again, after reviewing approximately 8,000 documents we have not yet found any documents that correspond to particular aspects of the indictment. Moreover, it is impossible to prepare a defense at this point before examining all documents to determine which documents are relevant to various allegations in the indictment. Although counsel has had the file for six weeks, it is impossible to have reviewed all the documents to determine which documents apply to which allegation in the indictment. Moreover, it has also been impossible to determine how some documents are relevant before going through all of the documents.

14.   Again, many documents involve check-cashing stores. These stores appear to have been legally permissible state-licensed check accepting and cash or cash equivalent, meaning money orders, cashier's checks and wire transfers, tendering   depositories acting "as banks" for thousands of clients over the course of many years, at least back into 1996. Expert testimony is necessary to determine the usual course and conduct of check cashing stores. It appears that from the documents reviewed thus far, these check-cashing stores were conducting legitimate business activities. However, without reviewing all the documents it is impossible to make a final conclusion. If there is discovery contrary to these facts, then the defense has not yet reached this discovery as yet in the limited amount of time we have had to examine the discovery.

15.   Again, with respect to the RICO allegations, regarding the Defendant, in the limited amount of discovery we have examined, we find thus far that the Defendant relied upon the receipt of funds duly and legally processed through FDIC-insured, Federal Reserve-licensed banks, always receiving the funds in the form of Federal Reserve-generated wire transfers and never in the form of any checks for deposit. This appears to be a legal action. We have not yet seen documents that reflect any illegality with respect to this matter.

16.   Documents have not been fully examined by a defense forensic accounting expert and cannot be until we review all the documents to determine which documents need to be reviewed by an expert witness. Moreover, CJA approval is necessary before the hiring of an expert witness.

17.   The following must be done to render effective representation of the Defendant:

a)   There are foreign documents located in several countries, which need to be examined. This is a particularly sensitive request from the defense. The defense requests an opportunity to address the court in-camera regarding these matters. While the Defendant is not in possession of these documents, he is prepared to advise the Court in-camera of the documents requested, the last known location of these documents and the relevance they have to this case.

b)   There are actual witnesses that the defense needs time to assemble including expert witnesses and witnesses to refute allegations brought forth by the government. Many of these potential witnesses are outside the United States. Additional

7

time is necessary to contact these witnesses, interview these witnesses and determine whether these witnesses are willing to return to the United States to testify. These witnesses, in addition to some located in the United States, some in foreign countries. The defense requests to present to the court in-camera a list of these witnesses along with their proposed testimony and why their testimony is relevant to the defense.

c)    Additional time is necessary so that counsel can confer with the Defendant to determine which of the specific witnesses need to interviewed versus which will be actually called at the trial to testify. Counsel has not had an adequate opportunity to confer with any of these witnesses as the primary emphasis has been placed on reviewing documents to determine which documents apply to which counts of the indictment and to prepare and understand how the government is going to prove the various counts of the indictment.

18.    This motion is made in good faith and not for purpose of delay.

19.    The Defendant moves the court to set a status conference so the parties may discuss these issues with the court.

**WHEREFORE,** the Defendant respectfully prays that this Honorable Court will grant the relief sought herein.

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was furnished to Assistant United States Attorneys Diana Fernandez and Brian McCormick, via fax and U.S. Mail, 500 East Broward Boulevard, Suite 700, Fort Lauderdale, Florida 33394, William Norris, Esquire, Attorney for Fred Morgenstern, 7685 Southwest 104th Street, Suite 104,

Miami, Florida 33156, Emanuel Perez, Esquire, Attorney for Joseph Silvestri, 2121 Ponce de

Leon Boulevard, Suite 920, Coral Gables, Florida 33144, David Tarlow, Esquire, Attorney for

Frederick Scarola, 801 Brickell Avenue, Suite 1901, Miami, Florida 33132, Jon May,

Esquire, Attorney for Charles Clay, 200 East Broward Boulevard, Suite 1210, Fort

Lauderdale, Florida 33301 , Philip Horowitz, Esquire, Attorney for Mark Weiss, 12651 South

Dixie Highway, Suite 328, Miami, Florida 33156, on this 24th day of January, 2002.


Respectfully submitted,

SCOTT W. SAKIN, P .A.
CJA Counsel for Defendant
1411 N.W. North River Drive
Miami, Florida 33125
Tel: (305) 545-0007

By: _____

SCOTT W. SAKIN
Florida Bar Nº 349089

9

**EXHIBIT B**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

CASE N° 00-6309-CR-DIMITROULEAS

UNITED STATES OF AMERICA,

     *Plaintiff,*

VS.

DAVID MORGENSTERN,

     *Defendant.*

_____/

## DEFENDANT DAVID MORGENSTERN'S
## MOTION FOR CONTINUANCE

    Defendant, **DAVID MORGENSTERN,** *pro se,* hereby moves this Honorable Court to continue the trial date in the above styled case, currently scheduled for May 6, 2002, for both medical reasons, and in order to notify the court of ineffective CJA counsel, and as such, in support thereof, states the following:

    1.    The Defendant is filing this motion pro se because his CJA counsel, on April 23, 2002, refused to file a Motion that was materially similar to this Motion where CJA Counsel wanted to edit out all references that may challenge the effectiveness of his representation. It is the Defendant's opinion that his editing process would have compromised the Defendant's rights accorded under the Sixth Amendment of the United States Constitution, including the honest and earnest disclosure that CJA's counsel is entirely unprepared for trial, as stated throughout this Motion. Certain further revisions

1

have been made to this Motion from the earlier version in order to emphasize where CJA Counsel cannot possibly become prepared for trial in the twelve calendar days remaining prior to the present trial date, on May 6, 2002.

2.    The Defendant is currently set for trial in a fifty-five-count indictment wherein the Defendant is charged in approximately thirty-one counts. This is a complex indictment charging RICO, money laundering, wire fraud and mail fraud. There are other counts charging other defendants with other crimes, which this Defendant is not involved.

3.    The Defendant was arrested October 30, 2000. Sometime in December 2000 Defendant was appointed CJA counsel. As the court is aware, problems developed with regard to certain discovery, copies of documents, and among the various attorneys representing some of the defendants.

4.    On November 6, 2001, Defendant's original CJA counsel withdrew from further representation of the Defendant. Undersigned counsel was appointed thereafter to represent the Defendant and was advised this case was set for trial for February 11, 2002. Shortly after being appointed, undersigned counsel conferred with original CJA counsel. Counsel further requested that the file be provided to the undersigned forthwith. It was not until December 13, 2001 that the original CJA counsel made the file available.

5.    This discovery consisted of approximately 20,000 documents. Some of the documents include pleadings but the majority of the documents are documents relating to the underlying charges of the RICO, money laundering, wire fraud and mail fraud.

6.    Approximately one third of the documents were organized in a fashion so that documents could be properly examined. Since December 13, 2001, the Defendant personally, with minimal assistance but sufficient guidance from CJA counsel, has:

2

(a)   Cataloged and organized all of these documents such that they can now be fully examined for use in preparing the defense for the Defendant;

(b)   Indexed and labeled these documents, so as to determine which count(s) of the indictment to which these groups of documents may apply;

(c)   Separated Rule 404(b) evidence that the government intends to use at this trial that was originally mixed with other discovery. Regarding this evidence, CJA Counsel has examined none of these documents to date.

7.   Many of the discovery documents consist of checks, the daily recordings, and depository receipts of check cashing stores in relation to their various banking depositories. Regarding this evidence, CJA Counsel has examined none of these documents to date.

8.   There are also wiretap transcripts. Undersigned counsel has not had an opportunity to determine whether the government complied with the necessary minimization requirements to determine whether there should be litigation over whether the wiretaps should be admissible. This is absolutely critical to the Defendant's defense and must be done in order to render effective representation. Undersigned counsel has not had sufficient time to listen to the wiretaps, review the wiretap transcripts to determine the reliability of the transcripts or if all CD ROMS have been in fact transcribed. Regarding this evidence, CJA Counsel has examined none of these documents to date.

9.   Assistant United States Attorney Brian McCormick informed undersigned counsel during the week of January 14, 2002 that there is new discovery in this case that the government intends to use which originates from the Bahamas. This material was

3

received by undersigned Counsel on February 8, 2002. Additional discovery was received through to the middle of March 2002. Assistant United States Attorney Brian McCormick indicated that these documents are devastating to the Defendant's case. . Regarding this evidence, CJA Counsel has examined none of these documents to date. Thus, it is unknown as to the relevancy of any of these documents to the government's case or to the Defendant's defense.

.    10.    The review of documents relating to the money laundering and RICO is very time consuming. Up until January 25, 2002, The Defendant worked almost every day on this case, and CJA Counsel was extremely cooperative, providing guidance and instruction. But on January 25, 2002, the Defendant was admitted to West Boca Medical Center, Boca Raton, Florida for emergency surgery, relating to an infection in a massive blood clot that had formed as the result of an attempt to repair a left shoulder separation on January 10, 2002. The infection led to him contracting Septicemia, a dangerous infection of the blood, a type of blood poisoning caused by pathogenic microorganisms. It causes immune system deficiency, internal bleeding without warning, and other serious complications, including potential damage to, or failure of, vital organs. The Defendant was hospitalized from January 25 through February 1, 2002, then again, February 8 through February 11, 2002, then again April 4 through April 11, 2002. In addition, between these dates, and through to April 17, 2002, the Defendant was an outpatient at North Broward Medical Center for infusion of intravenous antibiotics seven days every week, a process taking anywhere from three to seven hours each day. For clarity, the Defense has attached "Exhibit A – Inpatient and Outpatient Schedule for Patient David

4

A. Morgenstern" in order to illustrate the unavailability of the Defendant to continue to work on this case with CJA Counsel as he did prior to January 25, 2002.

11.    The government has been kept fully informed about the Defendant health issues, both by the Defendant's doctors and by CJA Counsel. The Defendant is still undergoing post-operative care and infectious disease therapy as the result of the unsuccessful surgical repair of a separated left shoulder. He is lethargic and in chronic pain. He requires precise, time-consuming therapy in order to have the opportunity to overcome this disease, including testing his own ability to withstand infection during periods where he is not under medication. Since contracting the disease, the Defendant became ill during his first "test" period beginning March 27, 2002, and relapsed eight days later on April 4, 2002.

12.    On March 26, 2002, the U.S. District Court, Civil Division, in Greenville, South Carolina required the Defendant to attend a "Motion For Show Cause Hearing On Civil Contempt, To Repatriate Funds, For Corporate Records And Other Relief," (the "Motion") in difference to medical advice presented to that Court in a motion to continue the hearing signed by his physician that he was too ill to travel. The motion was denied. The Defendant traveled to South Carolina and met with Prosecutor David Stephens, Mr. Marvin Harrison, special expert witness who will give testimony for the government in the matter before this court, Mr. James R. Pavlock, Trial Attorney, U.S. Department of Justice, Criminal Division, Asset Forfeiture and Money Laundering Section, Washington, DC, and Mr. Paul Jacobs, Special Agent, FBI, under proffer, as opposed to going to the civil contempt hearing, in an attempt to resolve matters out of court, as the Defendant is also

5

indicted in a criminal case in that District. The Defendant sustained over 20 hours of interrogation over the period of only two and half days. On March 29, 2002, he then returned to South Florida where he met with Prosecutor Brian McCormick, and Mr. McCormick's team of five other interrogators on April 2 and 3, 2002. The Defendant was having difficulty in the interview on April 3, 2002, both understanding the questions, and responding to them in a way that was satisfying and apologized openly for his lack of mental acuity. The Defendant then asked if he could excuse himself from the proffer until such time as the GI bleeding, lethargy and chronic pain that was plaguing him could be abated. Thus, during the nine days from March 27 through April 4, 2002, where the Defendant was supposed to be resting and thus strengthening his immune system and ability to fight his disease without the infusion of IV antibiotics he spent two days traveling, four days in proffers, and three days at rest. During the early morning hours of April 4, 2002, the Defendant relapsed into another sepsis episode and was re-admitted to North Broward Medical Center. When a sepsis patient relapses, the only available treatment is a progressively stronger intravenous antibiotic that is inherently more toxic. These therapies tend to make the patient actually sicker, weaker and mentally depressed for a while, similar to chemotherapy in cancer patients. The Defendant is in the middle of this treatment regimen. While he is currently in a cycle of no antibiotic medication at this date, he is not cured. He is very susceptible to relapse. He remains physically exhausted and mentally despaired. The Defense has attached Exhibit "B" - Doctor's Letters Concerning David A. Morgenstern's Current Health Condition," all of which has been made available to Assistant United States Attorney Brian McCormick for verification.

6

The Defense simply has not had the time in the last three months due to the Defendant's medical circumstances, to materially work on this case more than only a few hours, and even then, the work completed has been predominantly clerical matters.

13.    There are at least seventy boxes of documents and perhaps more from the so-called "South Carolina investment fraud." CJA Counsel and the Defendant did have the opportunity to separate from these boxes at the Ft. Lauderdale, FL Courthouse approximately eleven boxes of materials are of importance to the Defense. CJA Counsel has never able to return to examine these documents with the Defendant sufficient to request copies from the government due to the Defendant's medical condition. These "carved out" documents are extremely important to the Defense. They need to be reviewed by the Defendant and CJA Counsel. The Defendant believes these documents show conclusively that he is not mentioned in the South Carolina investment fraud. They contain omissions concluding that David Morgenstern had no knowledge, involvement or participation with the South Carolina investment fraud. The Defendant, not CJA Counsel, has divided these documents out. They must be copied and properly examined. In spite of the Defndant's efforts, CJA Counsel has examined none of these documents to date.

11.    Due to the Defendant's illness, the Defense needs additional time to assess which expert witnesses are necessary for the presentation of the defense. The Defendant intends to present a defense in this case. The Defendant wishes to present testimony and evidence that support his belief that his business fell within ordinary and customary practices permissible abroad. The defense must engage these expert witnesses who are in the area of management of offshore international, trust and business undertakings, as well

7

as certain inter- and intra-jurisdictional issues, since the Defendant did little business in the U.S. but operated throughout Europe and elsewhere. Expert testimony is necessary to opine on corporate matters which permit taking advantage of opportunities while still being in compliance with the business, banking and accounting laws of a diverse set of nations. In sum, expert testimony is necessary to determine the following:

a)   Whether any of the corporations, whether formed by the Defendant or not, which operated under the laws of other nations, in fact did so in full compliance with the laws of that land.

b)   Whether there is any conflict between foreign laws and the laws of the U.S. and if these corporations in fact operated in compliance with the laws of the country of formation, how such rightful operation could be wrongly interpreted under U.S. laws.

c)   Whether the Defendant and these certain foreign corporations followed generally accepted accounting practices in their respective countries of operation, as well as cross-jurisdictionally into other foreign countries, and thus further complied with governing law associated with their business.

d)   Whether the diverse bank secrecy laws, fraud and money laundering statues, of these respective foreign jurisdictions vary materially from U.S. States laws and whether compliance by non-U.S. entities as required under the laws of these foreign nations may be in opposition to U.S. laws.

e)   Whether the Defendant's actions in non-U.S. entities was consistent with banking, trading, investment, fiduciary and trustee practices in each country

including whether he fulfilled his obligations and responsibilities for such an operation under the confines of prevailing law.

13. It is impossible to prepare a defense at this point before examining all documents of discovery in this case, in order to determine which documents are relevant to various allegations in the indictment. Counsel has had part of the file for approximately four months, but other parts of the discovery have been available for only a few weeks. It has been impossible to review all the documents to determine which documents apply to which allegation in the indictment without the input of the Defendant who has been aterially unavailable since the last continuance due to illness. It has been impossible for CJA Counsel to determine how some documents are relevant.

14. Again, many documents involve check-cashing stores. These stores appear to have been legally permissible state-licensed check accepting and cash or cash equivalent, meaning money orders, cashier's checks and wire transfers, tendering depositories acting "as banks" for thousands of clients over the course of many years, at least back into 1996. Expert testimony is necessary to determine the usual course and conduct of check cashing stores. It appears that from the documents reviewed thus far, these check-cashing stores were conducting legitimate business activities. However, without reviewing all the documents it is impossible to make a final conclusion.

15. Again, with respect to the RICO allegations, regarding the Defendant, in the limited amount of discovery CJA Counsel examined, CJA Couinsel has only been able to ascertain that the Defendant relied upon the receipt of funds duly and legally processed

9

through FDIC-insured, Federal Reserve-licensed banks, always receiving the funds in the form of Federal Reserve-generated wire transfers and never in the form of any checks for deposit. This appears to be a legal action. CJA Counsel has not reviewed enough documents to ascertain any illegality with respect to this matter.

16.    Documents have not been examined by a defense forensic accounting expert and cannot be until we review all the documents to determine which documents need to be reviewed by an expert witness. Moreover, CJA approval is necessary before the hiring of an expert witness. No approval has yet been sought by CJA Counsel.

17.    The following must be done to render effective representation of the Defendant:

a)    There are foreign documents from several countries that need to be examined. This is a particularly sensitive request from the defense. While the Defendant is now in possession of some of these documents, CJA Counsel has examined none of them.

b)    There are actual witnesses that the defense needs time to assemble including expert witnesses and witnesses to refute allegations brought forth by the government. Many of these potential witnesses are outside the United States. CJA Counsel has contacted none of these witnesses, nor interviewed any of them, in order to determine whether these witnesses are willing to return to the United States to testify. These witnesses, in addition to some located in the United States, some are located in foreign countries. . Regarding expert witnesses, CJA Counsel has done nothing to acquire such experts to date.

c)    CJA Counsel has not conferred with the Defendant to determine which of the specific witnesses need to interviewed versus which will be actually called at the trial to testify, nor has CJA Counsel conferred with any of these witnesses as the primary emphasis

10

has been placed on reviewing documents to determine which documents apply to which counts of the indictment and to prepare and understand how the government is going to prove the various counts of the indictment.

18.    This motion is made in good faith and not for purpose of delay.

19.    The Defendant moves the court to set a status conference so the parties may discuss these issues with the court, sufficient for CJA Counsel to honestly admit to his unpreparedness and the further capacity to prepare in twelve calendar days.

**WHEREFORE,** the Defendant respectfully prays that this Honorable Court will grant the relief sought herein.

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was furnished to Assistant United States Attorneys Diana Fernandez and Brian McCormick, via fax and U.S. Mail, 500 East Broward Boulevard, Suite 700, Fort Lauderdale, Florida 33394, William Norris, Esquire, Attorney for Fred Morgenstern, 7685 Southwest 104th Street, Suite 104, Miami, Florida 33156, and Emanuel Perez, Esquire, Attorney for Joseph Silvestri, 2121 Ponce de Leon Boulevard, Suite 920, Coral Gables, Florida 33144, and Philip Horowitz, Esquire, Attorney for Mark Weiss, 12651 South Dixie Highway, Suite 328, Miami, Florida 33156, on this 23th day of April, 2002.

Respectfully submitted,

David A. Morgenstern, *pro se*
7534 Estrella Circle
Boca Raton, FL 33433

By: _____
David A. Morgenstern

11

**EXHIBIT C**