UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO.  00-6309-CR-DIMITROULEAS
and 02-60101-CR-DIMITROULEAS

| | |
|---|---|
| UNITED STATES OF AMERICA,    ) | **NIGHT BOX FILED** |
| ) | |
| Plaintiff,    ) | APR   4 2003 |
| ) | |
| VS.    ) | CLARENCE MADDOX |
| ) | CLERK, USDC/SDFL/FTL |
| DAVID MORGENSTERN,    ) | |
| ) | |
| Defendant.    ) | |
| _____ ____) | |

# DEFENDANT DAVID A. MORGENSTERN'S OBJECTIONS TO PRESENTENCE INVESTIGATION REPORT AND THE POSITION OF DEFENDANT WITH RESPECT TO SENTENCING FACTORS

COMES NOW the Defendant, David A. Morgenstern, by and through his undersigned attorney, pursuant to Rule 32 of the Federal Rules of Criminal Procedure and files these Objections with respect to the revised Pre-sentence Investigation Report (PSR), dated March 14, 2003, which has been filed in this case. The Defendant would further assert herein his position with respect to various sentencing factors that should be considered by the Court at the time of imposition of sentence.



*U.S. v. David Morgenstern*, Cases No. 00-6309-CR (s) (s) and
02-60100-CR-DIMITROULEAS
Objections to Pre-sentence Investigation Report
Page 2

References to page and paragraph numbers are to the corresponding portions of the PSR and are provided as a convenience to the Court. Objections dated July 11, 2002 that were previously filed with this court by Defendant's former counsel Scott W. Sakin, Esq, with respect to the Pre-Sentence Investigation Report dated June 27, 2002, revised August 13, 2002, are incorporated herein by reference.

## PART A.    THE OFFENSE

The Offense Conduct

The Defendant objects to The Offense Conduct portion of the Pre-sentence Investigation Report being written in its entirety by the prosecutor instead of by the Probation Officer. This was improper and a violation of the Defendant's Due Process Rights. As the Eleventh Circuit has stated, in discussing the role of the Pre-sentence Investigation Report and the Court in sentencing a defendant in *U.S. v. Butler*, 41 F.3d 1435 (11th Cir. 1995):

> The sentencing procedures facilitate this fact-finding function. The trial court "begins the guideline sentencing process by determining the circumstances of the defendant's offense conduct, the defendant's criminal history, and any other facts deemed relevant by the guidelines." *United States v. Scroggins*, 880 F.2d 1204, 1209 (11th Cir.1989) (footnotes omitted), *cert. denied*, 494 U.S. 1083, 110 S.Ct. 1816, 108 L.Ed.2d 946 (1990). The court does so after reviewing a Pre-sentence Report ("PSR") prepared by a probation officer. Under the Guidelines, the PSR serves a purpose similar to pretrial stipulations in a civil case: In addition to initially indicating the provisions applicable to the case at hand, the PSR facilitates the identification of factual and legal issues that remain in dispute."

*U.S. v. David Morgenstern*, Cases No. 00-6309-CR (s) (s) and
02-60100-CR-DIMITROULEAS
Objections to Pre-sentence Investigation Report
Page 3

> *United States v. Roman*, 989 F.2d 1117, 1122 n. 11 (11th Cir.1993) (en banc) (Tjoflat, C.J., concurring), cert. denied, --- U.S. ----, 114 S.Ct. 2139, 128 L.Ed.2d 868 (1994); *United States v. Wise*, 881 F.2d 970, 972 (11th Cir.1989). *Id.* at 1444."

The Report as it has been prepared fails to provide the Court with an objective assessment of the facts of this case, especially with regard to the Defendant's involvement in it and denies the Defendant of his Constitutionally protected rights. In *U.S. v. Scroggins*, 880 F.2d 1204, 1209 (11th Cir.1989), *cert. denied*, 494 U.S. 1083, 110 S.Ct. 1816, 108 L.Ed.2d 946 (1990), where the Eleventh Circuit stated it was "... the probation officer (who) sets out the facts of the case and explains how the guidelines should be applied to those facts." *Id.* at 1209, note 11; Fed.R.Crim.P. 32(a)(1). *See U.S. v. Onofre-Segarra*, 126 F.3d 1308, 1309 (11th Cir. 1997).

The Pre-sentence Investigation Report filed in this case is nothing more than the Prosecution's theory of the case. Assertions with respect to Sentencing guidelines are then interspersed by the Probation Officer, but even these are based upon the facts as set forth by the Prosecution.

1. Page 8, Paragraph 8. The Defendant disputes the conclusion cited in this paragraph that by selling a personally owned vehicle, 1998 Mercedes not a 1988 as the

*U.S. v. David Morgenstern*, Cases No. 00-6309-CR (s) (s) and
02-60100-CR-DIMITROULEAS
Objections to Pre-sentence Investigation Report
Page 4

report indicates, to avoid repossession by the bank that financed it should be characterized as "knowingly and willfully violating the conditions of his bond." The original bond conditions were ambiguous since no definition was put forth as to what a "commercial financial transaction" was. It is not a commercial financial transaction to dispose of a financed, personal vehicle when the person owning it can no longer afford to make the payments. The court did not agree, and as such, placed him in Dismas House under house arrest. To illustrate the Defendant's assertion, while in Dismas House, his other car was repossessed since it could not be sold. There is no showing that by selling the car, the Defendant was in willful violation of the bond conditions, the issue of willfulness being the question at issue here. As the Eleventh Circuit noted in *U.S. v. Taylor*, 88 F.3d 938, 943 (11th Cir. 1996): "An enhancement under § 3C1.1 is warranted '[i]f the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense.' U.S.S.G.§3C1.1." *Id.* at 943.

2. Page 12, Paragraph 27. The Defendant disputes the assertion that he and his

*U.S. v. David Morgenstern*, Cases No. 00-6309-CR (s) (s) and
02-60100-CR-DIMITROULEAS
Objections to Pre-sentence Investigation Report
Page 5

brother "and other members of the conspiracy became involved in an investment fraud scheme orchestrated by Virgil Womack and based in Greenville, South Carolina." This court cannot consider actions and activity that is not an integral part of the crime charged. *U.S. v. Eidson*, 108 F.3d 1336 (11th Cir. 1997) There the Eleventh Circuit held:

> 'As we noted in *United States v. Rodgers*, a sentencing court cannot enhance an offense level merely because a defendant "acted with others for the other charges against him." 951 F.2d 1220, 1221 (11th Cir.)(citing *United States v. Tetzlaff*, 896 F.2d 1071, 1074 (7th Cir.1990)), *modified in part*, 972 F.2d 1253 (11th Cir.1992). In other words, a court should only consider "conduct immediately concerning" the offense of conviction in determining an adjustment under § 3B1.1(a)." *See Holland*, 22 F.3d at 1046 n. 10. [FN12].

*Id.* at 1345. The Court there held that it would not consider an increase in the offense level for an environmental offense the number of participants involved in a mail fraud scheme because one set of acts did not "immediately concern" the other.' *Id.* at 1346.

3.     Page 13, Paragraph 27 (continued). The Defendant disputes the assertion, made without any form of factual support whatsoever that "most of the investments (i.e. investor's funds as raised by Womack) were from the elderly or those with limited resources." There is absolutely no support in the record whatsoever for this assertion.

4. Page 13, Paragraph 31. The Defendant points out that while over $16 million of the Chemical Trust/Virgil Womack et al. funds were transferred to the Falcon Trust Managed Fund account at Barclays' Bank, London, England, the statement "most of

*U.S. v. David Morgenstern,* Cases No. 00-6309-CR (s) (s) and
02-60100-CR-DIMITROULEAS
Objections to Pre-sentence Investigation Report
Page 6

which was recovered by the court-appointed receiver in the Womack case" is not true.

Barclay's Bank personnel, at the direction of the Defendant administered the investment

of these funds in US Treasury bonds, for the benefit of Chemical Trust. This was a

legitimate business transaction on which interest was earned and paid. The Defendant is

not a defendant in the Chemical Trust/Womack matter, and nothing in the evidence of

this case shows that the Defendant was a party to Womack's actions in South Carolina

or that he was in any way otherwise associated with Womack's company, Chemical

Trust. The Defendant had a specific job to perform in London, England where he held

residence and worked. Like any other investment fund manager, he had a finite

responsibility to manage funds beneficially owned by third parties who place their funds

into licensed commercial banks for such purposes. He did not, nor could he have had,

any knowledge, or responsibility to foresee what Womack may have done in the United

States independent of the limited knowledge that the Defendant had and the specific

efforts that he agreed to undertake.

What is significant with respect to Chemical Trust's Receiver/Trustee's receipt

of approximately $16.7 million in funds, 100% of which was recovered as opposed to

"most", this recovery had nothing whatsoever to do with recovery efforts by the

*U.S. v. David Morgenstern*, Cases No. 00-6309-CR (s) (s) and
02-60100-CR-DIMITROULEAS
Objections to Pre-sentence Investigation Report
Page 7

Receiver. In fact, it was solely through the actions of the Defendant that this repatriation of money occurred. Virgil Womack was arrested on or about January 6, 2000. By January 10, 2000, as a fiduciary, it was the Defendant who voluntarily began taking the steps necessary to return the money to the government. This was long before he had been identified as being involved in any wrongdoing, while at the time, the government, by its own admission, only knew of the $6 million that was sent by Womack directly to Falcon Trust at Barclays. They knew nothing of the total amount of funds on hand in that account. It was the Defendant, by and through Bob Hishon, an Atlanta, Georgia, attorney representing James Morgenstern, a co-trustee on the Falcon Trust Account, who told the government the exact total of funds on deposit, and as such, by January 31, 2000, every dime plus interest earned thereon, was in the South Carolina Receiver/Trustee's account, a plus-100% recovery. An order to repatriate funds against the Defendant was not entered in the record of the South Carolina case until on or about April 4, 2000.

5. Page 14, Paragraph 32. The Defendant disputes the conclusions reached in this paragraph as to what is disclosed by the review of the bank accounts in the Bahamas. As previously stated, the Government has accounted for all of the funds

*U.S. v. David Morgenstern*, Cases No. 00-6309-CR (s) (s) and
02-60100-CR-DIMITROULEAS
Objections to Pre-sentence Investigation Report
Page 8

attributed to the Defendant whose genesis was from Chemical Trust/Womack and in this paragraph, seeks to double count funds already accounted for or add funds irrelevant to this case and the forfeiture order as entered and agreed to. Therefore, these funds have no bearing on this case. *Eidson, supra.*

Role Assessment

6.  Page 19, Paragraph 58 and Page 22, Paragraph 75. The Defendant disputes the conclusion reached in these paragraphs that he is an "organizer or leader of this facet of the offense" so as to be subjected to a role adjustment. As the Eleventh Circuit recently pointed out in *U.S. v. Yeager*, ___ F.3d ___ (11th Cir. 2003)(2003 WL 1056598) the government bears the burden of proving by a preponderance of the evidence that the defendant had an aggravating role in the offense, citing *United States v. Alred*, 144 F.3d 1405, 1421 (11th Cir.1998). The Defendant held residence and worked in London, England. He did not operate, nor did he own or have any beneficial interest in, or participate in daily business activities of, any business or corporation in the United States. Working for a licensed fiduciary company under regulations governing such activity in the European Union, he invested funds that remained beneficially owned by third parties in the ordinary course of business. He was not an organizer or leader of criminal activity as defined in Section 3B 1.1(a) as reflected by

*U.S. v. David Morgenstern*, Cases No. 00-6309-CR (s) (s) and
02-60100-CR-DIMITROULEAS
Objections to Pre-sentence Investigation Report
Page 9

the PSI report, nor was the defendant's role in this case as an organizer or leader. This is an extensive indictment covering various facets of fraud and other activities in which, to a significant part, the Defendant had no dealings. He is not charged in many of the counts. The Defendant's involvement in this case is the investment of funds received only from Chemical Trust/Womack, et al., having nothing whatsoever to do with the so-called "mob counts," where these funds were received into bona fide and otherwise registered bank accounts exclusively via wire transfer, sent though the US Federal Reserve banking system. Further, the Defendant did not have "control" over any other person, and as such, certainly not five or more participants in this case. The Defendant instructed no one to commit any action relevant to any criminal intent, and did not exercise direct or indirect control over any others. Nor did the Defendant recruit others "to be involved." Notably, the Offense Conduct of the PSI report, which begins at paragraph 13 makes very little mention of David Morgenstern at all. Although some paragraphs mention him as receiving money from Chemical Trust/Womack, and others suggest that he received Chemical Trust/Womack funds from Fred Morgenstern, there are no facts that support that David Morgenstern was an organizer or leader of any criminal activity. There is simply no evidence to support a role adjustment in this case.

*U.S. v. David Morgenstern*, Cases No. 00-6309-CR (s) (s) and
02-60100-CR-DIMITROULEAS
Objections to Pre-sentence Investigation Report
Page 10

## Victim Impact

7. Page 22, Paragraph 76. This paragraph cites that "Pursuant to the written plea agreement, the government and the Defendant agreed to the entry of a forfeiture order and/or restitution order in the amount of $31,273,273.58 ~~'with credit'~~ for $17,769,346.22 that has already been transferred to a court-appointed receiver in District of South Carolina Civil Case No. 00-CV-236," a case that has yet to be adjudicated and thus still remains open. This statement, obviously made by Brain McCormick, to which the Defendant objects, re: *U.S. v. Scroggins*, also fails to acknowledge an approximate additional $128,800 made up of $16,800 in cash settlements by the Defendant's brother, Fred Morgenstern, and $112,000 in retail value diamond jewelry that was delivered by the Defendant to the government to further credit Defendant's restitution for a total of $17,898,146.22. Thus, the $13,503,927.36 should be reduced to a new total of $13,375,127.36. Further, since $16,665,000.00 (93%) of these funds were returned to the Receiver/Trustee voluntarily by the Defendant almost ten months before he was indicted, this sum should be considered substantial assistance because it occurred prior to charges being brought against the Defendant and was done voluntarily. There is no record of this action being anything other than the Defendant cooperating with law enforcement to mitigate investor losses.

*U.S. v. David Morgenstern,* Cases No. 00-6309-CR (s) (s) and
02-60100-CR-DIMITROULEAS
Objections to Pre-sentence Investigation Report
Page 11

Accordingly, the Defendant should receive credit from the government as stated, in the form of a downward departure in sentencing. The government should specifically perform with regards to giving credit that has meaning, as stated in the plea agreement.

<u>Adjustment for Obstruction of Justice</u>

Pages 22-23, Paragraphs 77-79. As previously noted, the Defendant objects to the determination of any matter in this report being made by "AUSA McCormick," including that he has obstructed justice, since under law, this is a determination to be first made by the Probation Officer, and if objected to by the Court. The Defendant objects to this conclusion as a final finding of fact by the Probation Officer in reliance upon accusations as presented by the prosecution since that matter is the subject of an unresolved civil case still pending in the District of South Carolina and as such, it remains un-adjudicated. The Defendant also points out that in order for an obstruction of justice to be found to exist there must first be a showing that the obstruction was "willful," the Eleventh Circuit "reasoning that the 'mens rea requirement of willfully obstructing or attempting to obstruct the administration of justice . . .' <u>requires that the defendant act with the purpose of obstructing justice.</u>" *U.S. v. Alpert*, 989 F.2d 454, 457-58 (11th Cir. 1993)(Citations omitted, emphasis added.) Completely absent in this

*U.S. v. David Morgenstern*, Cases No. 00-6309-CR (s) (s) and
02-60100-CR-DIMITROULEAS
Objections to Pre-sentence Investigation Report
Page 12

case is any showing of, here or anywhere, is the existence of willful conduct on the part

of the Defendant with intent to obstruct justice.

While the Defendant may understand that, in these time-constrained

circumstances, why a Probation Officer would refuse to specify and then change her

reasons for finding obstructive behavior, even the conclusory allegations as made by her

fail to comport with the foregoing requirements of law. Not only have the omissions

from the Report denied the Defendant his right to fair notice of the nature of the

"perjury" in order to prepare for the sentencing hearing, that which is presented as

"conclusive" is insufficient to establish obstruction. Furthermore, there must be a

basis for the court to find that the conduct "actually hindered" the investigation, a

finding which cannot possibly be made in this case. This issue is disputed, it is a subject

matter of civil case yet to be resolved, and therefore the government, which has the

burden of coming forward with proof to support the PSR's "conclusory factual recitals."

*U.S. v. Lawrence*, 47 F.3d 1559, 1567; *U.S. v. Bernardine*, 73 F.3d 1078 (11th Cir.

1996) is interrupting due process to which the Defendant is entitled under law.

Additionally, in order for any false statement to be "material" it must be

*U.S. v. David Morgenstern*, Cases No. 00-6309-CR (s) (s) and
02-60100-CR-DIMITROULEAS
Objections to Pre-sentence Investigation Report
Page 13

"evidence, [a] fact, statement, or information that, if believed, would tend to influence or affect the issue under decision." U.S.S.G. §3C1.1, comment, (n.5); *U.S. v. Gardiner*, 955 F.2d 1492 (11th Cir. 1992). The "issue under decision" at the time that the Defendant entered his plea was whether or not the Defendant understood his rights with respect to the three core objectives of Rule 11 an a plea of guilty to a crime in federal court generally. *See: U.S. v. Camacho*, 233 F.3d 1308 (11th Cir. 2000); *United States v. Mosley*, 173 F.3d 1318, 1322 (11th Cir.1999).[1]

In his plea colloquy the Defendant merely states that he understands what it is that he and the Government have agreed to as far as his house is concerned. The Defendant would refer the Court to U.S.S.G. §3C1.1, Commentary Note 1, which states, "suspect testimony and statements should be evaluated in a light most favorable to the defendant." *See: U.S. v. Salemi*, 26 F.2d 1084 (11th Cir. 1994).

---

[1]Those three core objectives have been defined as: (1) ensuring that the guilty plea is free from coercion; (2) ensuring that the defendant understands the nature of the charges against them; and (3) ensuring that the defendant is aware of the direct consequences of the guilty plea. *See: Camacho, supra, Mosley*, 173 F.3d at 1322; *United States v. Hourihan*, 936 F.2d 508, 511 n. 4 (11th Cir.1991).

*U.S. v. David Morgenstern,* Cases No. 00-6309-CR (s) (s) and
02-60100-CR-DIMITROULEAS
Objections to Pre-sentence Investigation Report
Page 14

Further, with respect to the factual assertions that the Government makes in this

matter, it is simply wrong. The evidence that the Government itself has supplied in this,

the South Florida case, actually supports the Defendant's position. First, the apparent

allegation is that the money used on the down payment for the house came from tainted

"Womack" money. However, the evidence, bates stamped 30-01363,[2] is an "Advice of

Debit Note" dated September 16, 1999. The notice shows an amount of one hundred

fifty thousand dollars ($150,000) from Americas Fidelity Capital Management

("AFCM") drawn on Americas International Bank Corporation, Ltd. ("AIBC") to the

benefit of Commercial Holdings, Ltd. Part of these funds were used to purchase the

house. AFCM was incorporated in 1996 and managed substantial deposits prior to the

formation of Americas Fidelity Assurance Corporation, Ltd. ("AFAC") in 1999. AFAC

was the only company to ever receive funds associated with Chemical Trust/Womack,

an assertion supported by the affidavit from Gary Christie, the Managing Director of

AIBC that was obtained with the AIBC bank records by the Government in this matter.

Thus, no AFCM funds or any belonging to Commercial Holdings were ever Chemical

Trust/Womack funds, now were any funds attributable to Chemical Trust and/or Virgil

---

[2] A copy is attached for the convenience of the Court.

*U.S. v. David Morgenstern*, Cases No. 00-6309-CR (s) (s) and
02-60100-CR-DIMITROULEAS
Objections to Pre-sentence Investigation Report
Page 15

Womack were ever placed into the AFCM account at AIBC.


Again, this assertion is supported by the affidavit obtained by the Government in this matter from Gary Christie, the Managing Director of AIBC. This fact is significant, because AFCM provided money to Commercial Holdings the source for the house down payment, in the ordinary course of business. Clearly both according to the bank records and Mr. Christie's affidavit, this was not money that can ever be attributed to Chemical Trust/Womack funds. Also, according to evidence produced by the Government in this case, including these bank records, all money attributed to Chemical Trust and/or Virgil Womack was either expensed or transferred out of AIBC prior to the closing on the house, an event that did not occur until early February, 2000.


The second assertion by the Government: That $2.8 million in tainted funds from Chemical Trust/Womack, et al. were sent to Gabriel MacEnroe simply is not true. Funds, in the amount of $2.8 million, sent from AIBC in October 1999 were sent from AFCM for the benefit of its investors to Slattocks Invest, S.A. As such, according to Mr. Christie's affidavit, since AFCM received no proceeds from Chemical Trust or

*U.S. v. David Morgenstern*, Cases No. 00-6309-CR (s) (s) and
02-60100-CR-DIMITROULEAS
Objections to Pre-sentence Investigation Report
Page 16

Womack funds, et al., these cannot be arbitrarily declared by the government to be Chemical Trust or Womack funds.


Further, at no time were any funds sent to Gabriel MacEnroe, including these. They were sent to a purported mortgage lender, Commercial Capital Finance (CCF), of Liechtenstein, which bought the mortgage for investment purposes from another mortgage lender, Yale Mortgage Company, with offices in Miami, FL in June 2000. CCF, according to records acquired from Liechtenstein, is a company arms-length to MacEnroe as evidenced by the attached group exhibit of documents.[3] Since other documents in this group exhibit establish the right of David Morgenstern to certain commissions acknowledged to be paid by Commercial Capital Establishment, for work performed, the mortgage is not in default, it remains in good standing and is in full force and effect, this fact in accordance with the public records of Palm Beach County, Florida public record.

---

[3] These documents include: Letters of June 26, 2000 and August 3, 2000 from Commercial Capital Establishment to V. Morgenstern and D. Jay Snyder, Esq.; Letter from D. Jay Snyder, Esq. to David and Victoria Morgenstern dated August 22, 2000; and a hold harmless agreement and "Confidentiality and Tax Declaration" signed by David Morgenstern dated September 14, 2000 and corporate formation documents, as part of a due diligence undertaking with respect to Mr. MacEnroe by Mr. Stewart Arnold, solicitor, London, England.

*U.S. v. David Morgenstern*, Cases No. 00-6309-CR (s) (s) and
02-60100-CR-DIMITROULEAS
Objections to Pre-sentence Investigation Report
Page 17

Further, in the record of this case, there is the entry of a Forfeiture Order with respect to the net of funds for which the government has agreed with Mr. Morgenstern that these are the total remaining funds for which he is culpable. This amount approximates $13.4 million in funds. The Government concludes that the Defendant transferred this amount of funds from AIBC to other institutions in favor of either investors in transactions that are unrelated to Chemical Trust/Womack, et al., or that business and personal expenses were paid with these proceeds. The AFCM funds sent to Slattocks Invest, S.A. from AIBC are not part of this total. The Government cannot meet its burden to prove that somehow the Defendant has obstructed justice. *U.S. v. Shriver*, 967 F.2d 572 (11th Cir. 1992); *U.S. v. Liss*, 265 F.3d 1220 (11th Cir. 2001); and this is a burden that must be satisfied with reliable and specific evidence. *U.S. v. Dabbs*, 134 F.3d 1071 (11th Cir. 1998). The Government here is attempting to manipulate the evidence in this case by ignoring the accounting that has already been resolved by the issuance of a Final Forfeiture Order by Court, and then collapsing matters that are unresolved in an open civil case, merely to seek a higher sentence against the Defendant. The Defendant submits that he is not susceptible to an enhancement for obstruction of justice and no such enhancement should be made of his sentence. The holding of the Eleventh Circuit in *U.S. v. Eidson, supra*, prohibits such action here. As recognized by the court there, neither the Guidelines nor the cases interpreting §3B1.1

*U.S. v. David Morgenstern*, Cases No. 00-6309-CR (s) (s) and
02-60100-CR-DIMITROULEAS
Objections to Pre-sentence Investigation Report
Page 18

provide a precise definition of "otherwise extensive." *Id.* at 1346. This ambiguity

would bring into play doctrine of the "rule of lenity" which applies in situations when a

statute, or Guideline, is unclear. *U.S. v. Trout*, 68 F.3d 1276 (11th Cir. 1995); *U.S. v.

Jenkins*, 58 F.3d 611 (11th Cir. 1995).


<u>Adjustment for Acceptance of Responsibility</u>

   8.      Pages 24-25, Paragraphs 84-85. The Defendant objects to being denied

the three level reduction for Acceptance of Responsibility. The Probation Officer makes

the statement in the Report that the Defendant has failed to provide voluntary assistance

to authorities in the recovery of the fruits and instrumentalities of the offense and that

fails to disclose his financial statements. Simultaneous with the filing of these

objections, these financial disclosures have been submitted as required to the Probation

Department and the assertion that he has failed to provide voluntary assistance to

recover the fruits and instrumentalities of the offense simply is not true. From the very

first event under which there was an indication of a "Chemical Trust/Womack" case,

namely the date of Womack's arrest on January 6, 2000, nearly ten months before the

Defendant was arrested on October 30, 2000 under the initial indictment in this case,

the Defendant took very action indicative of a person affirmatively accepting

responsibility for his actions. He has met all of the qualifications of U.S.S.G. §3E1.1.

*U.S. v. David Morgenstern,* Cases No. 00-6309-CR (s) (s) and
02-60100-CR-DIMITROULEAS
Objections to Pre-sentence Investigation Report
Page 19

He gave a statement to the Probation Officer and entered a plea of guilty to the charges
and sought to assist authorities in the further recovery of funds. He also assisted the law
enforcement and prosecutorial authorities during the course of the trial of Joseph
Silvestri, and he has been debriefed extensively by the prosecutors and agents in South
Florida, who by their own admissions on the record, said the Defendant provided
"Good information." He assisted the US Justice Department's Forfeiture Division,
Washington, DC, providing foreign banker's names, account numbers, and substantial
details with regards to means and methods for the movement of funds from the Untied
States, and from other countries to still others. He spent days with the prosecutors and
agents in South Carolina even when to do so increased the severity the effects of his
serious and otherwise life-threatening medical condition.

The Defendant was instrumental in securing the return of nearly $18 million to
the Womack Trustee in South Carolina, $16.7 million of which could not have been
recovered so quickly or easily under the laws of the United Kingdom without his
express actions, knowledge, sole access and cooperation - even before the government
knew of the existence of these proceeds as to location and in such quantities. This return
of significant proceeds occurred prior to the time he was ever named in any of the

*U.S. v. David Morgenstern*, Cases No. 00-6309-CR (s) (s) and
02-60100-CR-DIMITROULEAS
Objections to Pre-sentence Investigation Report
Page 20

litigation in this case whatsoever, and also was without an order issued from any court
to do so.

    The Defendant has also made considerable restitution in this case, already
repatriating nearly $18 million to the Receiver/Trustee in South Carolina, where the
approximate $13.4 million still required to achieve a total resolution, he has agreed to
accept responsibility for and to help in every manner possible to recover more funds.
Notably, the monies returned by the Defendant still remain the majority of funds
recovered, far and away more than any other defendant has done. In fact, Virgil
Womack who received a five-year sentence and agreed to a near-$55 million forfeiture
and restitution order has yet to provide credible explanations as to what happened to
more than $24 million that is still missing that went into bank accounts solely controlled
by him. By contract, when the Defendant was interviewed by the Forfeiture Division of
the United States Attorney's office about the remaining approximate balance of $13.4
million, he freely and earnestly offered to make any funds available, to help in every
way possible, to assist in locating any further funds without limitation.

*U.S. v. David Morgenstern*, Cases No. 00-6309-CR (s) (s) and
02-60100-CR-DIMITROULEAS
Objections to Pre-sentence Investigation Report
Page 21

It is clear that the Defendant has taken responsibility for his actions and his equally made Herculean efforts both before his indictment and after his plea in this case to assist the Government in getting money identified and returned. His arrest for domestic battery in June 2002 was a matter is completely unrelated to the alleged criminal conduct and as such, should not be included here. It was resolved with a not guilty plea under *nollo prosse*. The Defendant's family remains in tact, and they have put the incident behind them.

Further, the PSI Report wrongfully states in this paragraph's subject matter that the Defendant has obstructed justice. This is not true. While the Defendant has responded to these assertions above, in contrast to obstructing justice, he offered *"to develop any strategy, sting, investigative process, to provide any information, experience, expertise, knowledge or otherwise, to undertake any method with law enforcement, in order to recover any such funds take by fraud in any such case."*

Offense Level Computation

9.    Page 26, Paragraph 91. The Defendant objects to the assertion that he has been involved in the laundering of over $35,000,000. The total culpability by the Defendant in the Forfeiture Order was limited to $31,273,273.58 with "credit" given for

*U.S. v. David Morgenstern*, Cases No. 00-6309-CR (s) (s) and
02-60100-CR-DIMITROULEAS
Objections to Pre-sentence Investigation Report
Page 22

$17,769,346.22, plus the additional $126,800 that the government has failed to acknowledge as also being returned. He submits that the amount of money that could be reasonably foreseen by the Defendant should be limited to net funds associated with his restitution and Forfeiture Order, meaning the approximate sum of $13.4 million. The substantial assistance of the Defendant was voluntary, he was not charged with any crime, and this should be acknowledged. He should therefore have his base offense level (20) increased by 9 levels for a total of **29**.

　　　　10.　Page 26, Paragraph 92.　The Defendant objects to the conclusion reached in the PSR that he was an "organizer or leader" of criminal activity that involved five or more participants.　The Defendant should not receive any increase for his supposed "role" in the offense as provided by U.S.S.G. §3B1.1(a) or otherwise.　There is absolutely no showing whatsoever that the Defendant was involved with anyone else with respect to the money laundering activity to which the Defendant plead guilty or to the transfer of funds to which he plead guilty in the second case. *Eidson, supra.*

　　　　11. Page 26, Paragraph 94.　The Defendant objects, as he has previously done, to the enhancement for obstruction of justice.　There should not be two points added for this category since it has not been shown that the Defendant intentionally and willfully

*U.S. v. David Morgenstern*, Cases No. 00-6309-CR (s) (s) and
02-60100-CR-DIMITROULEAS
Objections to Pre-sentence Investigation Report
Page 23

undertook any steps to impede the investigation of this case or that he intentionally and willfully made any false statements in this case.

11.   Page 26, Paragraph 63.   Again, the Defendant objects to his not being accorded a three level adjustment for his affirmative acceptance of responsibility.   The PSI report continues to ignore the facts - that the Defendant has made substantial restitution in this case, and that the government, in the plea colloquy, agreed to "give credit" to the Defendant for the return of the $17,769,346.22 to the Receiver/Trustee in South Carolina. To repeat, this is far more than any other defendant has made available to the Receiver/Trust in this entire case. Accordingly, the Defendant should receive the acceptance of responsibility in light of all the facts and circumstances surrounding the plea in this case.

12. Page 27, Paragraph 98.  The Defendant's Total Offense Level should be **26.**

PART C.  OFFENDER CHARACTERISTICS

*U.S. v. David Morgenstern*, Cases No. 00-6309-CR (s) (s) and
02-60100-CR-DIMITROULEAS
Objections to Pre-sentence Investigation Report
Page 24

## Physical Condition

13.   Page 33, Paragraph 114, et seq.   It is quite apparent that the Defendant suffers from serious health maladies that need to be considered by the Court at the time of the imposition of sentence.   The illnesses that he suffered while this case was pending, and the on-going repercussions from it, were both real and significant.

## Substance Abuse

14.   Page 35, Paragraph 122 et seq.   The Defendant clearly has a substance abuse problem with both non-prescription and prescription drugs.   This is one individual who most certainly would benefit from the 500 drug program in prison.   The Defendant would therefore request that the Court order that the Defendant be placed into that program while incarcerated.

## Financial Condition:  Ability to Pay

15.   Page 40, Paragraph 143 et seq.   It is clear that the Defendant does not now have nor will he have the ability to pay a fine.   He is presently under a term of his plea agreement that requires restitution and he has further indebtedness as outlined in the PSR.   He should not be ordered to pay a fine.

*U.S. v. David Morgenstern*, Cases No. 00-6309-CR (s) (s) and
02-60100-CR-DIMITROULEAS
Objections to Pre-sentence Investigation Report
Page 25

# PART D.  SENTENCING OPTIONS

## Custody

16.  Page 47, Paragraph 171.   This paragraph should read as follows:  Based upon a total offense level of 26 and a criminal history category of II, the guideline imprisonment range is **63 – 78 months.**

# PART E.  FACTORS THAT MAY WARRANT A DEPARTURE

17.  The Defendant submits that he is more than entitled to a departure based upon his substantial assistance to law enforcement in the prosecution of Joseph Silvestri in Florida and also in his valuable assistance in obtaining the return of money to South Carolina and also in the identification and arrest of individuals involved in fraudulent activities through his cooperation in South Carolina.

18.  The Defendant further submits that he is entitled to a downward departure based upon U.S.S.G. §5K2.16 based upon his voluntary disgorgement of over sixteen million dollars to the United States prior to his being named as a party to any criminal or civil lawsuit, thereby making his identity and involvement known to the government.

Further, the Defendant is entitled to a downward departure based upon the

*U.S. v. David Morgenstern*, Cases No. 00-6309-CR (s) (s) and
02-60100-CR-DIMITROULEAS
Objections to Pre-sentence Investigation Report
Page 26

substantial restitution that he has made in this case. *U.S. v. Hairston*, 96 F.3d 102 (4th

Cir. 1996) (Restitution can provide basis for downward departure from Sentencing

Guidelines when present to such exceptional degree that it cannot be characterized as

typical or usual.)

The Defendant reserves the right to present further objections to the PSR at

the time of sentencing, or as evidence becomes available.

WHEREFORE, the Defendant respectfully moves the Court to make the

above corrections to the PSI report.

## CONCLUSION

The foregoing constitutes Defendant's Position with Respect to Sentencing

Factors and his Objections to the Pre-sentence Investigation Report. He submits

that his objections should be sustained and that his position with respect the various

sentencing factors is correct. The Defendant would therefore request that the Court

direct the Probation Officer to correct the Report to reflect the appropriate facts and

computations and to determine the appropriate guidelines range.

*U.S. v. David Morgenstern,* Case Nos. 00-6309-CR-Dimitrouleas and 02-60101-CR-Dimitrouleas
OBJECTIONS TO PRESENTENCE INVESTIGATION REPORT
Page 27


Respectfully submitted,

BRIAN R. McCOMB, ESQ.
174866
3458 SE Dixie Highway
Stuart, FL 34997

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of this pleading

was mailed to AUSA Brian McCormick/Diana Fernandez 500 E. Broward

Blvd 7th Fl. Ft. Lauderdale, Florida 33394, Michael J. Rosen, 2400 S. Dixie

Highway Miami, Florida 33133 and Frances Weisberg USPO 505 S. 2nd

Street, Ft. Pierce, Florida 34950-1505   *April 7, 2003*

BRIAN R. MCCOMB 174866
3458 S.E. DIXIE HIGHWAY
STUART, FLORIDA 34997
(772) 781-0069 FAX 223-0121

*U.S. v. David Morgenstern,* Case Nos. 00-6309-CR-Dimitrouleas and 02-60101-CR-Dimitrouleas
OBJECTIONS TO PRESENTENCE INVESTIGATION REPORT
Page 28

## Exhibit List

1. A copy of the AFCM debit memo for $150,000 to Commercial Holdings, relevant to the funds used to purchase the 7534 Estrella Circle, Boca Raton, Florida home.

2. Group Exhibit:

   (a) Letters of June 26, 2000 and August 3, 2000 from Commercial Capital Establishment to V. Morgenstern and D. Jay Snyder, Esq.;

   (b) Letter from D. Jay Snyder, Esq. to David and Victoria Morgenstern dated August 22, 2000;

   (c) A Hold Harmless Agreement and "Confidentiality and Tax Declaration" signed by David Morgenstern dated September 14, 2000.

   (d) Part of a due diligence undertaking by Mr. Stewart Arnold, solicitor, London, England, with respect to Commercial Capital Establishment, Commercial Capital Finance Corporate formation documents, and Mr. Gabriel MacEnroe Various dates from 1999 through March 2002.

# Americas International Bank
### Corporation Ltd.

Euro Canadian Centre, Ground Floor Marlborough St. & Navy Lyon Road P.O. N-7109 Nassau, Bahamas
Tel (242) 326-3981 Fax: (242) 326-3980

**Americas International Bank Corp. Ltd.**

Date September 16, 1999

**ADVICE OF DEBIT NOTE**

PLEASE NOTE THAT YOUR ACCOUNT HAS BEEN DEBITED AS FOLLOWS:

( One Hundred & Fifty Thousand Dollars )        Debit Amount  $ 150,000.00

(Americas Fidelity Capital         )
Management Ltd.-A/C#100200

**NAME AND ADDRESS OF CUSTOMER**

NAME OF RECEIVER:

Funds To: Commercial Holdings Ltd.

30-01363

AIB1360

# Commercial Capital Establishment

26th June 2000

Memo
To Mrs. V. Morgenstern,

Dear Mrs Morgenstern,

Please be advised we have swift wired the sum of USD 348'007.81 to Yale Mortgage Corporation. This takes into account interest up until close of business to-morrow Tuesday 22 June.

As per our conversation please at your earliest convenience forward copies of all insurance's held on the property and have our security interest noted on the policies. If you fax in the full details of the insurance company we or our appointed attorney will contact them directly.

Please also be advised that we have instructed Yale Mortgage Corp. to hold the Title deeds to our order while we have our attorney contact them. We will be instructing our attorney in Florida to register the UCC1 and any other filings necessary to secure our position.

I also confirm your advices that an up to date valuation will be sent to us shortly. Please for the record advise who will be supplying same.

Final documentation as appropriate will be sent to you shortly, the main thing was to take out the very costly mortgage.

I trust this is acceptable and I welcome your advices.

Yours sincerely

Gabriel MacEnroe

Swiss Address:
Commercial Capital Establisment
P.O. Box
CH-9001 St. Gallen, Switzerland
Tel: +41 71 220 18 18   Fax: +41 71 220 18 19

# COMMERCIAL CAPITAL FINANCE AG

Postfach
CH-9001 St. Gallen
Tel.: +41 71 220 18 18    Fax: +41 71 220 18 19

3rd August 2000

D. Jay Snyder
6629 Central Avenue
St. Petersburg Florida 33710
USA

Reference  V. Morgenstern Mortgage on 7554 Estrella Circle,
Boca Raton, FL 33433   USA

Dear Mr. Snyder,

Thank you for your fax on the above of July 25th and I apologise for the delay in replying.

The interest rate applicable is US Libor as quoted in London, second fixing plus 2% per annum.

The interest is due quarterly in arrears, i.e. 90 day from the day Yale Mortgage Corporation received the funds from us which was June 28th 2000. This interest is due 28th September 2000. The interest should be remitted 7 banking days earlier as it must be received on this company's bank account in Switzerland by 28th September 2000.

On 14 September or thereabout we will notify you of the precise rate (Libor) by fax and the account coordinates for receipt and send a copy to Mrs. Morgenstern also. Mrs. Morgenstern must notify you of the remittance in due time with a copy to us here.

I assume you have received the 1'500.00 USD, please confirm. Also please confirm you have taken care of all the legal issues and advise us the cost so that we can bill Mrs. Morgenstern direct and copy you. It's probably easier if they remit those costs direct to you and we then reconcile together. There is an administration charge levied by us as well.

I welcome your advices.

Yours sincerely

Gabriel MacEnroe

D. JAY SNYDER, P.A.
ATTORNEY AT LAW

**727.381.0000** PHONE
727.381.0101 FAX

Board Certified Taxation

6529 Central Avenue
St. Petersburg. FL 33710

August 22, 2000

David & Victoria Morgenstern
7534 Estrella Circle
Boca Raton, FL 33433

RE:  Commercial Capital Finance AG

Dear Mr. & Mrs. Morgenstern:

Please find enclosed the Mortgage and Promissory Note for your property located at 7534 Estrella Circle.  I have prepared these documents in accordance with my understanding of the agreed upon terms.  Please note that I have rounded the note to $348,000.00 for ease of calculating the interest payments.  The actual amount is $348,146.30.  I would suggest that the $146.30 be sent to Commercial Capital Finance directly.

As it is anticipated that the note will be renewed by the parties, I recommend that a renewal note be executed at the appropriate renewal date.  Since documentary stamps will be paid on the enclosed note, there will be no need for additional stamps on renewal as long as there is no additional monies advanced by Commercial Capital Finance.  I enclose a copy of the August 3 letter from my client with reference to the upcoming interest payment.

I would ask that both the note and mortgage be executed in front of the appropriate witnesses and a notary public and returned to me for recording in the envelope provided herein.  I assume you will be certain your insurance company provides me with the appropriate insurance endorsement with my client named as loss payee.

Thank you for your attention to this matter.  If you have any questions, please feel free to contact me.

Sincerely,

D. JAY SNYDER, P.A.

D. Jay Snyder, Esquire

DJS/thw
enclosures

I, David Morgenstern hereby hold fully and legally harmless Commercial Capital Establishment, Commercial Capital Finance AG, Gabriel MacEnroe and Max Broder from any consequence or action relating to my involvement in Americas International Bank and associated companies, Standard Atlantic, and any other activity of myself or companies I have been involved with on investment type activities as none of the above mentioned were involved.

I recognise I am entitled to commissions on any investment that I may from time to time introduce to any of the above entities that fulfils the necessary criteria and gains acceptance and accept to utilise said commission only in the persuance of legal activities. I may also use same for the settlement of outstanding issues I currently need to address. If and when I do same I will seek relevant advice so that I do not jeopardise any transaction in progress.

I hereby declare that I will to the best of my ability abide by all legal statutes and shall do nothing to render any of the above notated exposed or embarrassed or compromised in any way, recognising the consequences if I ignore same.

Signed                                        Witnessed

— Copy —

Dated 14th September, 2000

## Confidentiality and Tax Declaration

I, David Morgenstem

**do hereby declare:**

A) That I have been made fully aware by Commercial Capital Establishment of the need for confidentiality concerning the sensitive nature of all aspects of the transactions I have been discussing (Transaction). I am also aware that, due to said sensitivity in respect of certain areas of the transaction, the regulatory powers and authorities who regulate particular markets impose strict confidentiality requirements regarding all aspects of the investment business, the breaching of which may incur severe penalties which can affect the interests of not only the parties to the referenced transaction and their respective agents and representatives but also those of financial institutions, banks and other relevant entities.

B) That I will not disclose, either verbally or in written form, any knowledge that I may now have, or may receive in the future, be it either implicit or implied, with respect to the implementation of the referenced transaction and my resulting association with any party thereto or such parties agents, representatives, officers, associates employees, financial institutions, banks, legal advisors, their heirs or successors or any other related entity.

C) That I will not show, deliver or cause to be seen, any documents, papers, correspondence, memoranda or copies of such, relating to the implementation of the referenced transactions to any other person, persons, entity or entities of any kind nor shall I reference them to any third parties.

D) That I understand and do hereby agree that all aspects of the referenced transactions are confidential and must remain so to any and all outside parties no matter what the circumstance or cause.

E) That I shall pay all taxes due on any and all payments that I shall receive from any party in respect of the transactions and provide documents, proof of such payment when requested.

F) That I acknowledge my agreement and understanding that Commercial Capital Establishment and accepted parties will take whatever measures, including the seeking of liquidated damages and/or cancellation of all known agreements, if may deem necessary both to inform this Declaration and to protect it's interests and those of it's agents, representatives, officers, associates, employees, financial institutions, banks, legal advisors or any related party.

G) That I do enter into this Declaration of my own free will and judgement. Upon the affixture of my signature I am bound to this Declaration in fact and in spirit.

H) That I will not be a party to any illegal activity of be associated with any criminal activity in any of my business relationships.

I) That this Declaration shall be binding upon me, my heirs and/or successors and that it shall be governed and construed under the same jurisdiction as the referenced transaction agreement.

Given under my hand this 14th day of September 2000

....~ _coph_~...................................

**Witnessed:** ...................................

Passport No.:
Origin:

Passport No.:
Origin:



**Kennards Santer Wells**
Solicitors

PROPERTY, LEGAL & FINANCIAL SERVICES

718 High Road,
Leytonstone,
London, E11 3AJ

Mr David Morgenstern

By fax only

DX 58200 LEYTONSTONE

Tel: 020 8539 8338 & 020 8539 8258
Fax: 020 8556 3234

Your Ref:                    Our Ref: SA.VL                    Date: 27 March, 2002

Dear David

**Gabriel MacEnroe**

I refer to our recent telephone conversations.

I confirm the following:

1.  Whilst acting on your behalf in my former Practice of Stewart
    Arnold & Co, I met a man who identified himself as Gabriel
    MacEnroe. The first meeting was in 1999 at premises at Curzon
    Street London W1.

2.  I met Mr MacEnroe on several other occasions. At all times, he led
    me to believe he was a person engaged in bona fide financial
    investment business, namely as "Commercial Capital
    Establishment" based at St Gallen, Switzerland.

3.  I took the precaution of making enquiries as to the authenticity of
    Commercial Capital Establishment. I enclose a copy of my letter
    dated 25 May 1999 and the response dated 27 May 1999.

4.  On one occasion, I travelled with you and Mr Jonathan Ogden to
    St Gallen in Switzerland to meet with Mr MacEnroe at the offices
    of Commercial Capital Establishment. Mr MacEnroe introduced us
    to Mr Max Broder [named in the search results].

Partners:
R. H. Cohen LLB
S. J. Redpath LLB
M. H. Santer A.C.I.Arb
S. P. Tucker BSc (Econ)
P. J. Wells LLB
Mrs A. J. Yeshin BA
Legal Executive:
M. Roberts FInst.LEx
Estates Manager:
M. Frankfurt

Offices at:
Barking
(020) 8594 7542
Epping
01992 570505
Harold Wood
01708 371031
Leytonstone
(020) 8539 8258
Redbridge
(020) 8550 5103

This Firm is regulated by the Law Society in the conduct of investment business

Members of the
Solicitors Property Group,
Solicitors Financial Services Group,
Association of Personal Injury Lawyers
(APIL),
Law Society Children's Panel,
Family Law Panel,
Family Law Mediator

continued ...................../2





**Page two**

5.    I enclose copies of some communications from Mr MacEnroe. I will need to review all files as to the full extent of documents.

6.    From my perspective, I was aware that Mr MacEnroe dictated arrangements as to investments.

7.    I am willing to prepare and swear a Deposition setting out my recollections of my dealings with Mr MacEnroe.

8.    There are items currently held in storage that I am endeavouring to have released and returned to you. You have told me they include papers crucial to your current legal matters.

Yours sincerely

**STEWART ARNOLD**



EIDGENÖSSISCHE BANKENKOMMISSION
COMMISSION FÉDÉRALE DES BANQUES
COMMISSIONE FEDERALE DELLE BANCHE
SWISS FEDERAL BANKING COMMISSION

Date:           27 May 1999
Responsible:    Andrea Garnitschnig
Department:     Legal
Phone:          031 / 323 89 62
Reference:      ZRN 49-1

Stewart Arnold & Co., Solicitors
Attn.: M. Stewart Arnold
9 Stradbroke Grove, Clayhall
Ilford, Essex IG5 0DN
United Kingdom

## Asamina Treuhand; Commercial Capital Establishment;

## Commercial Capital Finance

Dear Mr Arnold:

We acknowledge receipt of your facsimile, dated May 25, 1999, requesting information on the above-captioned companies.

Asamina Treuhand AG and Commercial Capital Finance AG are registered with the commercial register of the canton St. Gall (see attached copies of the commercial register record). A company with the name "Commercial Capital Establishment" is not registered with the commercial register.

Neither Asamina Treuhand AG nor Commercial Capital Finance AG are authorised by the Swiss Federal Banking Commission (SFBC) to conduct business as a bank, securities dealer or investment fund in Switzerland and, therefore, are not under SFBC supervision. However, under Swiss law, investment counselling and asset management as well as foreign exchange trading are not subject to any authorisation requirements.



EIDGENÖSSISCHE BANKENKOMMISSION
COMMISSION FÉDÉRALE DES BANQUES
COMMISSIONE FEDERALE DELLE BANCHE
SWISS FEDERAL BANKING COMMISSION

2 / 2

The Federal Act on Stock Exchanges and Securities Trading of March 24, 1995 requires SFBC authorization only for the professional trading in securities by traders in their own name for the account of clients.

Yours sincerely

Secretariat of the
**SWISS FEDERAL BANKING COMMISSION**
Legal Department


Dina Balleyguier                    Andrea Garnitschnig


**Attachment**
as mentioned

Markgasse 37
Postfach
CH-3001 Bern

Telefon  031 322 69 11
Telefax  031 322 69 26

Handelsregister des Kantons St. Gallen    Seite 1 von 3

# Handelsregister des Kantons St. Gallen

- Online-Abruf eines vollständigen Datenstammes bei Sitzverlegung für Benutzer von HR-Win (gebührenfrei).

den 26.05.1999 um 16:48 [Stand vom 25.05.1999]

Kurzweg zu:   **Zweck      Publikationen      zeichnungsberechtigte Personen      Ende**

| Firmennummer 320.3.020.118-4/ | Rechtsnatur Aktiengesellschaft | Eintragung 21.01.1981 | Übertrag 3.000.020.118/a von:320.3.020.118-4/a |
|---|---|---|---|

| Ei | Lö | Firma |
|---|---|---|
| 1 | | ~~Palepo AG~~ |
| 2 | | ~~Palepo Trading und Consulting AG~~ |
| 2 | 6 | ~~(Palepo Trading und Consulting Ltd.)~~ |
| 6 | | Commercial Capital Finance AG |
| 6 | | (Commercial Capital Finance Ltd.) |

| Ref | Sitz |
|---|---|
| 1 | ~~Thal~~ |
| 2 | St. Gallen |

| Ref | Aktienkapital | Liberierung | Aktien-Stückelung |
|---|---|---|---|
| 1 | 50'000.-- | 50'000.-- | 50 Namenaktien zu CHF 1'000.-- |

| Ref | Adresse der Firma |
|---|---|
| 1 | ~~Dorfstrasse~~ ~~9423 Altenrhein~~ |
| 2 | ~~Zwinglistrasse 6~~ ~~9000 St. Gallen~~ |
| 7 | Rosenbergstrasse 14 9001 St. Gallen |

| Ei | Lö | Zweck |
|---|---|---|
| 1 | 2 | ~~Kauf, Verkauf, Vermietung und Verpachtung von Flugzeugen sowie der gewerbsmässige Transport von Personen und Gütern. Die Gesellschaft kann Patente und Lizenzen erwerben, auswerten und verkaufen, Liegenschaften erwerben und veräussern und sich an andern Unternehmen beteiligen.~~ |
| 2 | 6 | ~~Handels- und Vermittlungsgeschäfte aller Art, Finanzierungstransaktionen sowie Beratungs- und Treuhandgeschäfte mit Schwergewicht in osteuropäischen Staaten. Die Gesellschaft kann Patente und Lizenzen erwerben, auswerten und veräussern, sich an andern Unternehmungen beteiligen und Liegenschaften vermitteln, erwerben oder verkaussen.~~ |
| 6 | | Bank- und Vermittlungsgeschäfte aller Art, Finanzierungstransaktionen sowie Beratungs- |

Handelsregister des Kantons St. Gallen            Seite 2 von 3

und Treuhandgeschäfte, Arrangieren von sicheren Investitionen und Geschäftsdarlehen für Kunden sowie Führung und Überwachung der finanziellen Geschäfte der Kunden. Die Gesellschaft kann Patente und Lizenzen erwerben, auswerten und veräussern, sich an anderen Unternehmungen beteiligen sowie Liegenschaften vermitteln, erwerben oder veräussern.

| Ei | Lö | Bemerkungen |
|----|----|-------------|
| 6 | | Die Mitteilungen der Gesellschaft an die Aktionäre erfolgen durch eingeschriebenen Brief, allenfalls durch Publikation im SHAB. |
| 6 | | Die Übertragbarkeit der Namenaktien ist nach Massgabe der Statuten beschränkt. |

| Ref | Statutendatum |
|-----|---------------|
| 1 | 21.01.1981 |
| 1 | 27.06.1983 |
| 2 | 12.11.1991 |
| 6 | 02.10.1996 |

| Ref | Publikationsorgan |
|-----|-------------------|
| 1 | SHAB |

| Zei | Ref | TB-Nr | -Datum | SHAB-Nr | -Datum | Seite |
|-----|-----|-------|--------|---------|--------|-------|
| SS | 0 | | (Auslassung) | | (Auslassung) | |
| SS | 1 | 2685 | 28.06.1988 | 158 | 11.07.1988 | 2869 |
| UF | 2 | 5262 | 13.11.1991 | 227 | 22.11.1991 | 5016 |
| AM | 3 | 6278 | 17.09.1992 | 189 | 30.09.1992 | 4569 |
| KA | 4 | 4183 | 27.06.1994 | 127 | 04.07.1994 | 3724 |
| WI | 5 | 4820 | 15.07.1996 | 139 | 19.07.1996 | 4354 |
| GE | 6 | 6518 | 04.10.1996 | 197 | 10.10.1996 | 6174 |
| FK | 7 | 3265 | 20.05.1997 | 97 | 26.05.1997 | 3508 |
| GP | 8 | 308 | 15.01.1999 | 14 | 21.01.1999 | 453 |
| GP | 9 | 3079 | 12.05.1999 | 95 | 19.05.1999 | 3314 |

| Ei | Ae | Lö | Personalangaben | Funktion | Zeichnungsberechtig. |
|----|----|----|-----------------|----------|----------------------|
| 1 | | 2m | ~~Broder, Max, von Sargans, in Rheineck~~ | ~~Mitglied~~ | ~~Einzelunterschrift~~ |
| - | 2 | 5m | ~~Broder, Max, von Sargans, in Rheineck~~ | ~~Präsident~~ | ~~Einzelunterschrift~~ |
| 2 | - | 3 | ~~Clementi, Fabrizio R., italienischer Staatsangehöriger, in Roggwil TG~~ | ~~Mitglied~~ | ~~Einzelunterschrift~~ |
| 2 | - | 6 | ~~Lüscher-Geissmann, Elisabeth, von Baden, in Villnachern~~ | ~~Mitglied~~ | ohne Zeichnungsberechtigung |
| 4 | - | 5 | ~~National Treuhand AG, in St. Gallen~~ | ~~Revisionsstelle~~ | |
| - | 5 | 6m | ~~Broder, Max, von Sargans, in St. Gallen~~ | ~~Präsident~~ | ~~Einzelunterschrift~~ |
| 5 | - | 8 | ~~RCR Revisions AG, in St. Gallen~~ | ~~Revisionsstelle~~ | |
| | 6 | | Broder, Max, von Sargans, in St. Gallen | Mitglied | Einzelunterschrift |
| 9 | | | Speirer, Walter, von Affoltern am Albis, in Steinhausen | Revisionsstelle | |

den 26.05.1999 um 16:48 [Stand vom 25.05.1999]

*Die obenstehenden Informationen erfolgen ohne Gewähr und haben keinerlei Rechtswirkung.*

h.../fnrGetGratis.exe?fnr=3203020118&amt=320&lang=1&hrg_opt=10000&shab=197199   26.05.99

# Handelsregister des Kantons St. Gallen

- Online-Abruf eines vollständigen Datenstammes bei Sitzverlegung für Benutzer von HR-Win (gebührenfrei).

den 26.05.1999 um 16:49 [Stand vom 25.05.1999]

Kurzweg zu: **Zweck**  **Publikationen**  **zeichnungsberechtigte Personen**  **Ende**

| Firmennummer 320.3.028.224-8/ | | Rechtsnatur Aktiengesellschaft | | Eintragung 15.02.1988 |
|---|---|---|---|---|

| Ei | L8 | Firma | | |
|---|---|---|---|---|
| 1 | | Asamina Treuhand AG | | |
| 1 | | (Asamina Fiduciaire SA) (Asamina Fiduciaria SA) (Asamina Auditing Co Ltd) | | |

| Ref | Sitz |
|---|---|
| 0 | bisher in Glarus |
| 1 | St. Gallen |

| Ref | Aktienkapital | Liberierung | Aktien-Stückelung |
|---|---|---|---|
| 1 | 100'000.-- | 100'000.-- | 100 Namenaktien zu CHF 1'000.-- |

| Ref | Adresse der Firma |
|---|---|
| 1 | Zwinglistrasse 6 9000 St. Gallen |

| Ei | L8 | Zweck |
|---|---|---|
| 1 | | Tätigkeit auf allen Gebieten einer Treuhand- und Organisations-Gesellschaft, insbesondere Vornahme von Revisionen, Durchführung von Experten und Betriebsorganisationen; Steuer-, Finanz- und Wirtschaftsberatungen; Gründungen, Sanierungen und Liquidationen von Unternehmungen; Wahrung von Aktionär- oder Gläubigerrechten; Beratung in Fragen der Personalfürsorge und Einrichtung entsprechender Institutionen; Buchhaltungs- und Sekretariatsarbeiten. |

| Ei | L8 | Bemerkungen |
|---|---|---|
| 1 | | bisher in Glarus (SHAB Nr. 254 vom 30. Oktober 1984, S. 3843) |

| Ref | Statutendatum |
|---|---|
| 1 | 29.05.1980 |
| 1 | 15.02.1988 |

| Ref | Publikationsorgan |
|---|---|
| 1 | SHAB |

Handelsregister des Kantons St. Gallen                                          Seite 2 von 2

| | Ref | TB-Nr | -Datum | SHAB-Nr | -Datum | Seite |
|---|---|---|---|---|---|---|
| | 1 | 769 | 15.02.1988 | 49 | 29.02.1988 | 803 |
| KA | 2 | 3804 | 13.06.1994 | 117 | 20.06.1994 | 3434 |
| WI | 3 | 4266 | 21.06.1996 | 123 | 27.06.1996 | 3828 |
| WI | 4 | B 4826 | 15.07.1996 | B 139 | 19.07.1996 | 4354 |
| GP | 5 | 305 | 15.01.1999 | 14 | 21.01.1999 | 453 |
| GP | 6 | 3075 | 12.05.1999 | 95 | 19.05.1999 | 3313 |

| Ei | Ae | Lö | Personalangaben | Funktion | Zeichnungsberechtig. |
|---|---|---|---|---|---|
| ~~1~~ | | ~~3m~~ | ~~Broder, Max, von Sargans, in Rheineck~~ | ~~Mitglied~~ | ~~Einzelunterschrift~~ |
| ~~2~~ | | ~~3~~ | ~~National Treuhand AG, in St. Gallen~~ | ~~Revisionsstelle~~ | |
| | 3 | | Broder, Max, von Sargans, in St. Gallen | Mitglied | Einzelunterschrift |
| ~~3~~ | - | ~~4~~ | ~~RCR Consulting & Treuhand AG, in St. Gallen~~ | ~~Revisionsstelle~~ | |
| ~~4~~ | - | ~~5~~ | ~~RCR Revisions AG, in St. Gallen~~ | ~~Revisionsstelle~~ | |
| 6 | | | Speirer, Walter, von Affoltern am Albis, in Steinhausen | Revisionsstelle | |

den 26.05.1999 um 16:49 [Stand vom 25.05.1999]

*Die obenstehenden Informationen erfolgen ohne Gewähr und haben keinerlei Rechtswirkung.*
*Verbindlich sind einzig der vom kantonalen Handelregisteramt ausgestellte, beglaubigte*
*Handelsregisterauszug und der Publikationstext im Schweizerischen Handelsamtsblatt (SHAB).*

*Sollten Sie mit unserem Web-Server ein Problem feststellen, können Sie uns per E-Mail eine elektronische Meldung senden*



**STEWART ARNOLD & CO**
Solicitors

9 Stradbroke Grove, Clayhall,
Ilford, Essex, IG5 0DN
Tel: 0181 924 9221
Fax: 0181 924 9220
DX 99333 BARKINGSIDE
Email: sarnoldco@aol.com

Our ref:       SA.VL.A81
Your ref:
Date:          25 May 1999

BY FAX ONLY 00 41 31 322 6926

Securities and Banking Regulator
Banking Commission
Tozzolino
Switzerland

Dear Sirs,

General enquiry

I am a Solicitor (lawyer) in England. I have limited knowledge of banking institutions. I
have been told that the following bodies are involved in financial investments and wish
to verify their existence. Can you please provide me with confirmation of good standing
of the following:

1.    ASAMINA TREUHAND AG of Zwinglistr 6, 9000 St. Gallen.
2.    COMMERCIAL CAPITAL ESTABLISHMENT also of St Gallen.
3.    COMMERCIAL CAPITAL FINANCE

Thank you for your help.

Yours faithfully,

STEWART ARNOLD
STEWART ARNOLD & CO.

03/01/2001  12:01  +41-71-2261819                                    S.    01
03-JAN-'05 WED 11:24 ID:

FAX NO:                                    #297 P02

# Commercial Capital Establishment

3rd January, 2001

Memo

To Stuart Arnold

Dear Stuart,

It was a pleasure meeting you again yesterday and I thank you for the information given.

As promised I am setting out our fax and phone details in anticipation in receiving the further information I requested either to-day or to-morrow.

Yours sincerely

Gabriel MacEnroe

Our contact numbers are

| | | |
|---|---|---|
| Tel | 0041+71 220 18 18 |
| Fax | 0041+71 220 18 19 |
| Swiss mobile | 0041+79 665 63 42 |

Swiss Address:
Commercial Capital Establishment
P.O. Box
CH-9001 St. Gallen, Switzerland
Tel: +41 71 220 18 18  Fax: +41 71 220 18 19

16/03/2001   12:21   +41-71-2201819                                   S.   01

# Commercial Capital Establishment

16th March 2001

Stewart Arnold Co
Solicitor
9 Stradbrooke Grove
Clay Hall
Ilford Essex 195 ODW
England

                                                    Strictly Private

Reference Refund as discussed with client

Dear Mr Arnold

We are in receipt of your banking coordinates. We are making appropriate
arrangements on the above. We shall advise you on Monday, in confidence the detail
with suitable confirmations in compliance with all regulatory conditions as appropriate
for your files. Then you may advise your client as you feel fit and of course take
whatever instructions he may wish to give, this information is of no interest to us,
however we ask that you accept and agree that the banking information as far as our
transfers to you are concerned that we shall give appertaining to same, shall be held
confidential to you and you alone.

Yours sincerely

Gabriel MacEnroe

Swiss Address:
Commercial Capital Establishment
P.O. Box
CH-9001 St. Gallen, Switzerland
Tel: +41 71 220 18 18   Fax: +41 71 220 18 19
e-mail: commercial_capital@bluewin.ch

# Commercial Capital Establishment

27th march 2001

Stewart Arnold & Co
9 Stradbrooke Grove
Clayhall
11 ford Essex IQ. 50DN

*Proli*

By Post

Dear Mr Arnold
Please be advised we have, as per our letter of 16th March instructed the first refund to be sent to you. I apologise for delay in advising. I had asked a colleague to post confirmation to you Monday but have just found out he mislaid the communication. You should allow 2/3 working days for receipt of cleared funds. This process will repeat on a regular basis over a very short period until the full refund due has been taken care of in line with discussions with the client. It is being done this way for logistical reasons considering certain parameters which make such refunds quicker to activate and without further dislocation as appropriate understanding all prevailing circumstances.
The refunds specify this and come with all attendant certifications. If after you receive and wish further confirmations please do not hesitate to ask. Please advise your client I am in hospital for a few days but available from early next week.

Yours sincerely

Gabriel MacEnroe

Swiss Address:
Commercial Capital Establishment
P.O. Box
CH-9001 St. Gallen, Switzerland
Tel: +41 71 220 18 18   Fax: +41 71 220 18 19
e-mail: commercial_capital@bluewin.ch

08/06/2001  08:41  +41-71-2281819                                    S.   01

# Commercial Capital Establishment

8ᵗʰ June 2001

Memo
To S Arnold
    London

Dear Mr Arnold
Please be advised the last settlement went from UBS AG Geneva and not as before.
I believe I may have not advised you. I am advised, as of yesterday that this should
be cleared, not as I had been told Wednesday but either today or Monday. I had
difficulty getting this information and please accept my apologies for delay. The value
was similar. Thus you should check towards the end of your day.


Yours sincerely


Gabriel MacEnroe


Commercial Capital Establishment
P.O. Box
CH-9001 St. Gallen, Switzerland
Tel: +41 71 220 19 19   Fax: +41 71 220 19 19
e-mail: commercial_capital@bluewin.ch