UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 00-6309-CR-DIMITROULEAS ✓
and 02-60101-CR-DIMITROULEAS
0

NIGHT BOX
FILED

APR 16 2003

CLARENCE MADDOX
CLERK, USDC/SDFL/FTL

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| DAVID MORGENSTERN, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## DEFENDANT DAVID A. MORGENSTERN'S
## MOTION FOR SPECIFIC PERFORMANCE OF
## TERMS OF PLEA AGREEMENT

COMES NOW the Defendant, David A. Morgenstern, by and through his undersigned attorney, and respectfully requests that this Honorable Court enter its Order finding a breach of the plea agreement that has been entered into in this case and grant the other remedies requested hereunder. The Defendant further requests that this Honorable Court enter its Order compelling the Government to specifically comply with the terms of the plea agreement in this matter. Alternatively, the Defendant would request that this Court enter its Order setting aside the plea and granting the Defendant a trial in this cause.



*U.S. v. David Morgenstern,* Case Nos. 00-6309-CR-Dimitrouleas and 02-60101-CR-Dimitrouleas
MOTION FOR SPECIFIC PERFORMANCE OF TERMS OF PLEA AGREEMENT
Page 2

As grounds to support said Motion the Defendant would state as follows:

1.  On May 21, 2002 the Defendant and the Government entered into a Plea Agreement [DE – 998].

2.  Paragraph 12 of the Plea Agreement sets forth what is commonly referred to as the "substantial assistance" provisions of the agreement as contemplated by U.S.S.G. 5K1.1 and Rule 35 of the Federal Rules of Criminal Procedure. These Guidelines and Rules, and the case law applicable thereto compel the Government to act in good faith in evaluating the cooperation of the Defendant when it makes its determination as to whether the Defendant has provided substantial assistance to the Government.

3.  The Defendant provided "substantial assistance" to the Government before he was ever indicted through the repatriation of $16,665,000 to the United States, [1] a right and proper action that the government is still refusing to acknowledge on its merits, by several debriefings following his arrest, and after his change of plea:

---

[1] In *United States v. Juncal* **12, 245 F. 3d 166, 172-73 (2d Cir. 2001)**, the court comments: "Guilty pleas are generally the result of a weighing of highly undesirable --coercive--alternatives rather than a soul-cleansing urge to confess." Certainly where the government puts forth its statement during the plea colloquy that the Defendant will be "given credit" for this sum and more, such a promise must be viewed in the light of weighing such alternatives. What the government now puts forth defies reality. Considering the circumstances facing the Defendant on May 21, 2002, declared indigent, represented by an appointed CJA Counsel unprepared for trial the next day, unwell, in a "plea or else" situation put forth by the court, facing incarceration, the subject matter of this part of "given credit" could not possibly be about "reducing the sum of restitution he would still owe," as the government contends was the subject at hand, but rather the Defendant expected the calculation of his sentencing guidelines to be reduced by this sum, that he would receive credit for acceptance of responsibility and substantial assistance for the voluntary return of these sums. For the government to now declare that their statement "given credit" during the plea colloquy merely meant the obvious – that restitution was reduced - rather than reality – that there would be a recalculation of the Defendant's sentencing guidelines, a point obviously more the subject matter of any plea agreement than restitution, is bad faith.

1) In South Florida, in May 2002, by assisting the Government in the prosecution of Joseph Silvestri by answering questions posed to him by the prosecution team during the course of the trial[2];

2) In South Carolina, in March 2002, under proffer, not under plea, by turning over documentation and giving testimony in a complete, open inspection by the Government, concerning the mechanisms of fraud-related and money laundering-type activities, including:

   a)   Financial instruments: How use of domestic, foreign and international equities, bonds, and financial contracts are used to establish schemes, and how the conversion of paper instruments to "wire tradable" instruments via DTC, EUROCLEAR and others, after being rated on Bloomberg, Finch, etc. reporting services are used to perpetrate these frauds, even for, by and within major legitimate corporations;

   b)   Financial Reconnaissance: How to identity in financial statements, even

---

[2] On three occasions during the course of the trial, Senior Trial Attorney, DOJ/Criminal Division, James Pavlock called the Defendant via cell phone to "get the low down" on Roger Imperial of Accordia Insurance. The Defendant told Mr. Pavlock that Roger and Joe Silvestri were actually close friends, a fact not known to the government - Silvestri was displaying Imperial as an "outsider." The Defendant also sent information via facsimile, including a letter prior to Womack's arrest showing Imperial's familiarity with the subject matter about funds on deposit (in general) and other such matters. According to Mr. Pavlock, he said the Defendant's material served the government's case well and that "every bit counts towards your (the Defendant's) substantial assistance."

audited ones, or annual reports, etc., how fraudulent transactions can be disguised to appear as authentic business transactions, fooling shareholders and outside auditors alike;

c)   Fraudulent Securities: How to spot forgeries, trace transfers, even through currency exchanges: How safe-keeping receipts and letters of credit, and other such authentic bank-issued "face paper" are used to cloak fraudulent and/or stolen financial instruments.

d)   Money Laundering: How true ownership of funds is hidden in London and Swiss banks - methods used by Iraqi, Iranian, Serbian, Croatian, Syrian and Russian fraudsters, and how securities issues and financial instruments are used to cover true funds ownership;

3)   In South Carolina, March, 2002, before plea but under proffer, by providing key disclosures about how High Yield Investment Programs" (HYIP) work, bringing fruit to an otherwise barren two-plus year nationwide sting investigating HYIPs, information including: a) How the paper works and why they are structured the way they are; b) How passports copies are used in identity theft; c) Why fax transmissions must be in 14pt type faces;

4)   Again, In South Carolina, March, 2002, how the root of all HYIPs is the

"Advance Fee Scheme" – something the government did not know, and as such they had not figured out how HYIPs get money from unsuspecting investors. Only through the Defendant's information did the government discover how money is extracted from investors in a "no risk, no loss" environment - where no money appears to change hands.

5)  In March 2002, in South Carolina, the Defendant gave enlightenment as to how trusts, offshore banks, secrecy laws, trust fund conveyances, international financial transactions, etc. shift control of funds away from the rightful owners of such funds, and the Defendant showed the government how to spot an Advance Fee Scheme in an HYIP transaction. This evidence leding to the arrest of Mr. Robert McCall in Indiana, among others, and another "Texas HYIP Defendant" who – according to Paul Jacobs – *"gave up without an indictment once challenged with the details of the Advance Fee Scheme."* These arrests plus what the Defendant believes are others that followed between March 2002 and December 2002, included information provided on at least fourteen (14) of the following individuals that were on the government's suspect list, including information on these individual's methods of operation:

*U.S. v. David Morgenstern,* Case Nos. 00-6309-CR-Dimitrouleas and 02-60101-CR-Dimitrouleas
MOTION FOR SPECIFIC PERFORMANCE OF TERMS OF PLEA AGREEMENT
Page 6

| | |
|---|---|
| 1. Dr. James McCall, Indiana | 2. Peter Johnson, Toronto Canada |
| 3. Joseph "Joe" Finney, Colorado Springs, CO | 4. Mr. Heijnen, New Mexico |
| 5. Mr. Ball | 6. George Reig |
| 7. Wilber Stakes, Connecticut | 8. Ron MoQwena, Orlando, FL |
| 9. Bob (Robert) Downing, Boston, Mass. | 10. Sam Harrison, Global Link, Houston, TX |
| 11. Senator Omar Rains California | 12. Tony Morino, a "trader" in London |
| 13. Mike Miller, Texas | 14. Linn Kalish, Los Angeles, CA |
| 15. Jack Schrold, Orlando, FL | 16. Bert Pedal/Rudy Neito, New York NY |
| 17. Richard Gurnett, Scotsdale, AZ | 18. "Kitten" Otto Washington, DC |
| 19. Basudev (Gustav C. Bujkovsky) 3 | 20. Steven Males |
| 21. Joe Miccelli | 22. Judson "Jud" Strater - Travel agency |
| 23. Perry Slater | 24. Linda Dixon, USA and Canada |
| 25. Mr. Sader | 26. Mr. Drayton, London |
| 27. Kevin McKay, London | 28. Alex Morehead South Carolina |
| 29. William O'Connor, TX and elsewhere | 30. Sy Taud, California |
| 31. Mario Petticon CA | 32. William Bailey Washington |
| 33. James "Jim" Martin, Tennessee | 34. Mohammad M'rabet Moroccan, Amsterdam |
| 35. Jigar Shifkit | 36. John F. Napoli, supposed IMF trader |
| 37. Yawar | 38. Neals Bruin |
| 39. Wilfred Bass, Jr. | 40. Yaman Namli |
| 41. Bruce Harper, Ft. Lauderdale | 42. Ed Rieson, Miami |
| 43. Bill Hanna, WPB, Interco, Bahamas | 44. Garnet Oldhouse Texas |
| 45. Christopher Poole, Cardiff, Wales | 46. Ken Weisman Texas |
| 47. Shinder Ganger, Lancaster, England | 48. Dobb, White & Co. London |

6)  In March 2002, in South Carolina, after explaining to the Government how an

"Advance Fee Scheme" operated and how violators use it to their advantage, the

Defendant informed Special Agent Jacobs and Prosecutor Stephens in South

Carolina that if MacEnroe failed to pay settlements due the Defendant, then

---

[3] An attorney for Soners Marine, S.A. 3457 Stetson Avenue, San Diego, California 92122, dealing in fraudulent North Korean paper with Gurnett.

MacEnroe's receipt of an approximate $4 million in fees might be classed as an Advance Fee Scheme on the Defendant. MacEnroe when he was, arrested in October 2000, also had a "settlement" sheet that showed substantial funds due the Defendant's investor groups, which were commissions due from MacEnroe. Again, the government had no knowledge of the topic "Advance Fee Scheme" before this important key evidence was provided to resolve cases and arrests.

7) In South Carolina in March 2002, while under proffer, the Defendant provided additional information, and then again, reaffirmed in August 2002, while under his South Florida plea agreement. This information was more information concerning codefendant Gabriel MacEnroe, including exact bank statements that the government is now attempting to use – out of context - against the Defendant, even though these statements were provided under the Defendant's Proffers and Plea Agreement. These were European bank statements indicated the locations of MacEnroe's bank accounts previously unknown to the government being suppressed by him in Switzerland and elsewhere. These documents, when combined with over 3,000 pages of documents showing MacEnroe's promises, contracts, agreements to pay commissions, indications of funds on deposit in European banks for the benefit of the Defendant and his investors, shows the

*U.S. v. David Morgenstern,* Case Nos. 00-6309-CR-Dimitrouleas and 02-60101-CR-Dimitrouleas
MOTION FOR SPECIFIC PERFORMANCE OF TERMS OF PLEA AGREEMENT
Page 8

Defendant not as co-conspirator at all, a conclusion easily drawn by Special Agent Paul Jacobs, Prosecutor David Stephens and Trial Counsel James Pavlock. While they had full access to the Defendant and these documents, freely and rightly provided in full cooperation towards substantial assistance by the Defendant, while under proffer and under plea, they were quite satisfied with the results. [4]

4.  The Defendant provided truly substantial cooperation, by assisting the Government not only in the instant case against the codefendant, Joseph Silvestri, but also against codefendants and others engaged in criminal activity in South Carolina and elsewhere.

5.  To date the Government has not filed a Motion for Downward Departure pursuant to 5K1.1 of the Sentencing Guidelines.  In fact, the Government has expressed its intention <u>not</u> to file any such motion.  Yet based upon the attached Exhibit A, "Plea Agreement" prosecutor David Stephens is not opposed to substantial assistance on the part of the Defendant.  Also, in this attached plea agreement (at paragraph 11, page 5), the Government states that it *"agrees and stipulates that in the instant*

---

[4] The Defendant finds it astounding that these three men have conveniently "forgotten" what the Defendant provided. Their positions are now changed, while at the same time they continue to ignore facts, like Vernon Shiffett, who was indicted in December 2002, on insurance fraud charges in the State of Ohio, for perpetrating a $29 million fraud, was being utilized at the time by the government to "sting" the Defendant. This means they permitted this man to continue to operate an unabated criminal enterprise where hundreds of unsuspecting victims lost money at the expense of perpetuating their on-going two-plus year HYIP investigation.

*case (i.e. criminal case number 8:00-69, which apparently replaces case no. 8:00-CR-697-47 of record) there was no actual monetary loss and that an intended loss cannot be accurately calculated, therefore the United States Sentencing Guideline, Section 2B1.1(b)(1) is not applicable."* In August 2002, this offer was not on the table. At that time, the only offer was that the Defendant plead guilty to *"conspiring with MacEnroe to steal $60 million,"* a stipulation the Defendant could not honestly make. Ironically, as this motion shows, now that the government has already used the Defendant's substantial assistance, it will not give a 5K1 recommendation for sentence reduction. More disturbing, is that after having provided significant cooperation; there are parts of his testimony and certain documentary evidence that he gave under proffer and plea that now are being used by the government against him. Whether the substantial assistance was for this matter or for the South Carolina matter, or used towards the arrest, prosecution and conviction of other individuals, it is bad faith on the part of the Government not to file a 5K1 Motion.

6. The Defendant notes here for the record that the government in a response dated April 15, 2003, to defendant David Morgenstern's "Objections to the Pre-sentence Investigation Report ("PSI"), Position With Respect To Sentencing Factors, And Motion For Downward Departure", where the government addressed the objections

*U.S. v. David Morgenstern,* Case Nos. 00-6309-CR-Dimitrouleas and 02-60101-CR-Dimitrouleas
MOTION FOR SPECIFIC PERFORMANCE OF TERMS OF PLEA AGREEMENT
Page 10

presented by the Defendant, in its response, the government states that *"as to any*

*factual disputes which are not already supported by the record, the government will*

*be prepared to present witnesses and/or evidence at the sentencing hearing."* In

anticipation of the Government's calling witnesses, if they do, to so testify in order for

the Government to meet its burden with respect to the issues raised by the Defendant,

the Defendant respectfully submits that the government must disclose in advance of the

sentencing hearing such witnesses it intends to present and reveal their expected

testimony so that the Defendant can prepare for cross-examination of these witnesses

as accorded under *Jencks v. United States,* 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d

1103 (1957) and the Jencks Act, 18 U.S.C. §3500. Rule 26.2 of the Federal Rules of

Criminal Procedure provides that *Jencks* material is subject to disclosure at a contested

evidentiary hearing. In the Defendant's PSI objections, he provided simple exhibits to

prove his objective points. In response, the government has reputed these proofs with

the references to transcripts of testimony provided by government witnesses during the

Silvestri trial, made bold statements to draw conclusions supposedly reached by

examining certain evidentiary documents that the Defense has not had the privilege to

examine for inadmissibility and inserted text - out-of-context – from taped

conversations gained by law enforcement alleged to be of the Defendant making

statements that are, to this date, still evidence to be challenged in the pending District of South Carolina case, as well as matters that are not concluded from the yet to be resolved Civil Case No. 6:00-236-13, with respect to the Defendant. Accordingly, the Defendant hereby renews its motion for the release of exculpatory evidence under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), regarding sentencing with respect to these elaborate statements. Finally, the whole matter of supposed obstruction of justice over the matter of the Defendant's answers regarding his home fails to follow the record. During the plea colloquy, the Defendant agreed with the government entirely - that if any funds were from the Womack matter, then his home would be subject to the forfeiture order, but if not, it would not. The Defendant has articulately disputed, not only during proffer and in substantial assistance meetings, but also in his PSI objections, the accounting for these funds. For this matter, the only way to resolve this dispute is by granting the Defendant the evidentiary hearing he has already requested in other Motions and elsewhere during proffer and plea sessions.

7. When the Government enters into a plea agreement it is bound to live up to its end of the bargain. *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971); *U.S. v. Johnson*, 132 F.3d 628 (11th Cir. 1998). Specific

*U.S. v. David Morgenstern*, Case Nos. 00-6309-CR-Dimitrouleas and 02-60101-CR-Dimitrouleas
MOTION FOR SPECIFIC PERFORMANCE OF TERMS OF PLEA AGREEMENT
Page 12

performance is the preferred remedy to a breach of a plea agreement in this court.

*Santobello, supra; U.S. v Kummer*, 89 F.3d 1536 (11th Cir. 1996); *U.S. v. Jefferies*, 908 F.2d 1520, 1527 (11th Cir.1990).   As stated by the Eleventh Circuit in *Kummer, supra:*

> This court has said that when the government "or the court" does not follow a plea agreement the court should order specific performance or afford the defendant an opportunity to withdraw the plea; and specific performance is preferred. *United States v. Jefferies*, 908 F.2d 1520, 1527 (11th Cir.1990) (plea stipulation specified drug quantity but court found quantity to be larger); *See also United States v. Taylor*, 77 F.3d 368, 371 (11th Cir.1996) (government paid "lip service" to plea agreement but then affirmatively supported position inconsistent with agreement; defendant allowed to withdraw plea); *United States v. Rewis*, 969 F.2d 985, 988-89 (11th Cir.1992) (when government breached plea agreement, remedies include specific enforcement or permitting withdrawal of plea).

*Id.* at 1543. It is the duty of the Court to determine whether the Government failed to exercise good faith in its determination not to move the Court for a reduction based upon the Defendant having rendered substantial assistance. See, e.g., *Cunningham v. Diesslin*, 92 F.3d 1054 (10th Cir.1996); *United States v. Hernandez*, 17 F.3d 78 (5th Cir.1994); United *States v. Conner*, 930 F.2d 1073, 1076 (4th Cir.1991).   The plea agreement in Exhibit A and the acknowledgment of "good information" provided by the Defendant in Mr. Stephen's letter attached as Exhibit B, (page 3 at paragraph 4) while not the "magic words" serves to underscore bad faith on the part of the government. In South Carolina, in August 2002, the

Defendant chose not to lie. Because of this, the Defendant has had his substantial assistance denied, his parity of sentencing to Womack, who received a total of 60 months in the District of South Carolina, which was a reasonable expectation of the Defendant and the whole reason why the Rule 20 was entered into, a District that accepted it, but then, merely because the Defendant, who offered in August 2002 to plea to "something he could live with," – an offer the government would not permit, yet are now willing to offer it, yet they refuse to file a 5K1 motion.

8. The Defendant submits that he has more than met his burden. It is the duty of this Court to assure that the Government lives up to the terms of the agreement that it reached with the Defendant. This Court must either compel the Government to file the appropriate motion based upon the assistance provided by the Defendant or alternatively allow the Defendant to withdraw his previously entered plea to the charges contained in the Indictment and the Information.

WHEREFORE the Defendant respectfully requests that this Honorable Court enter its Order granting the relief as set forth above.

Respectfully submitted,
BRIAN R. McCOMB, ESQ.
174866
3458 SE Dixie Highway
Stuart, FL 34997

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by FAX TO: AUSA Brian McCormick, Esq. and Diane Fernandez, United States Attorney's Office, 500 E. Broward Blvd., Ft. Lauderdale, FL 33394 and Michael J. Rosen, Esquire, attorney for Fred Morgenstern, this the 16th day of April 2003.

Respectfully submitted,

BRIAN R. McCOMB, ESQ.

174866

3458 SE Dixie Highway
Stuart, FL 34997

EXHIBIT A - Current South Carolina Plea Agreement with Defendant

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No: 8:00-69 |
| | ) | |
| v. | ) | |
| | ) | **PLEA AGREEMENT** |
| DAVID MORGENSTERN | ) | |
| | ) | |

AGREEMENT made this _____ day of _____, 2003, between and
among the United States of America, as represented by United States Attorney J. STROM
THURMOND, JR., Assistant United States Attorney David C. Stephens; the Defendant, **DAVID
MORGENSTERN**, and Defendant's Attorneys, Jessica Salveni and Bradley Bennet, Esquire.

IN CONSIDERATION of the mutual promises made herein, the parties hereto agree as
follows:

1.     The Defendant, **DAVID MORGENSTERN**, agrees to plead guilty to Count One
of the Indictment now pending, FED. R. CRIM. P. 11(a), which charges Conspiracy to Commit
Wire Fraud in Violation of Title 18, United States Code, Section 1343, a violation of Title 18,
United States Code, Section 1343, all in violation of Title 18, United States Code, Section 371.

2.     The Defendant, **DAVID MORGENSTERN**, agrees to consent to the
commencement of a presentence investigation immediately, FED. R. CRIM. P. 32(c).

3.     The Defendant, **DAVID MORGENSTERN**, understands that in addition to any
fines that the Court may impose, the Court will assess $100.00 for each felony count to which he
pleads guilty and will assess $25.00 for each misdemeanor count to which he pleads guilty. The
Defendant agrees to pay the special assessment by certified check or money order and to deliver



the special assessment, on the day the Defendant executes this Plea Agreement, to the Clerk, U.S.

District Court, in compliance with the Statement of Special Assessment Amount attached hereto.

The Defendant further agrees that any monetary penalty that the Court imposes, including the

special assessment, fine, costs or restitution, is due immediately unless otherwise stated by the

Court. The Defendant further agrees to submit a fully completed Financial Statement of Debtor

form as requested by the United States Attorney's Office. The Defendant further agrees that

failure to pay the special assessment at the time of the entry of the guilty plea may result in the

obligations of the Attorneys for the Government within this agreement becoming null and void.

The Defendant understands that any monetary penalty imposed is not dischargeable in

bankruptcy. The Defendant further understands that if he fails to pay the special assessment, this

unpaid debt will be turned over to the collections division within the U.S. Attorney's Office for

collection, 18 U.S.C. § 3013.

4.    The Defendant, **DAVID MORGENSTERN**, agrees to be fully truthful and

forthright with the United States Attorney's Office for the District of South Carolina and federal

law enforcement agents in their investigation of any unlawful activities, to include, but not

limited to, truthful and complete debriefings of the Defendant's knowledge concerning any

unlawful activities. Also, the Defendant understands that he must fully disclose and provide

truthful information to the Attorneys for the Government including any books, papers, or

documents or any other items of evidentiary value to the investigation. The Defendant must also

testify fully and truthfully before any grand juries and at any trials or other proceedings if called

upon to do so by the Attorneys for the Government, subject to prosecution for perjury for not

testifying truthfully. The failure of the Defendant to be fully truthful and forthright at any stage

-2-



will, at the sole election of the Attorneys for the Government, cause the obligations of the Attorneys for the Government within this Agreement to become null and void. Further, it is expressly agreed that if the obligations of the Attorneys for the Government within this Agreement become null and void due to the lack of truthfulness on the part of the Defendant, the Defendant understands that: (1) the Defendant will not be permitted to withdraw his plea of guilty to the offenses described above: (2) any and all additional charges known to the Attorneys for the Government may be filed in the appropriate district: (3) the Attorneys for the Government may argue for a maximum sentence for the offense to which the Defendant has pleaded guilty; and (4) the Attorneys for the Government may use any and all information and testimony provided by the Defendant in the prosecution of the Defendant of all charges.

5.      The Defendant, **DAVID MORGENSTERN**, agrees to submit to such polygraph examinations as may be requested by the Attorneys for the Government and agrees that any such examinations shall be performed by a polygraph examiner selected by the Attorneys for the Government. Defendant, **DAVID MORGENSTERN**, further agrees that his failure to pass any such polygraph examination to the Government's satisfaction will result, at Government's sole discretion, in the obligations of the Attorneys for the Government within the Agreement becoming null and void.

6.      The Attorneys for the Government agree not to prosecute the Defendant, **DAVID MORGENSTERN**, for other offenses committed in the District of South Carolina prior to date of signing of this plea agreement, which are the same or similar character as those cited herein, with the understanding by the Defendant that no limitation shall be placed upon the Court's consideration of information concerning the background, character, and conduct of the Defendant

-3-

for the purpose of imposing an appropriate sentence, and such other offenses may be considered as relevant conduct pursuant to Section 1B1.3 of the United States Sentencing Commission Guidelines, FED R. CRIM. P. 8(a).

7.     The Attorneys for the Government agree to dismiss Counts 2, 3 and 4 of the Indictment against the Defendant, DAVID MORGENSTERN, FED. R. CRIM. P. 11(e)(1)(A).

8.     The Attorneys for the Government agree that any self-incriminating information provided by the Defendant, DAVID MORGENSTERN, as a result of the cooperation required by the terms of this Agreement, although available to the Court, will not be used against the Defendant, DAVID MORGENSTERN, in determining the Defendant's applicable guideline range for sentencing pursuant to the U.S. Sentencing Commission Guidelines. The provisions of this paragraph shall not be applied to restrict any such information:

(A) known to the Attorneys for the Government prior to the date of this Agreement;

(B) concerning the existence of prior convictions and sentences in determining § 4B1.1 (career offender);

(C) in a prosecution for perjury or giving a false statement; or

(D) in the event there is a breach of the cooperation provisions of this Plea Agreement. § 1B1.8, United States Sentencing Commission Guidelines.

9.     The Defendant, DAVID MORGENSTERN, understands that the matter of sentencing is within the sole discretion of the Court, and that the sentence applicable to Defendant's case will be imposed in conformity with the United States Sentencing Commission Guidelines, Application Notes and Policy Statements. The Defendant also understands that Defendant's sentence has not yet been determined by the Court, and that any estimate of a

-4-

probable sentencing range Defendant may have received from Defendant's attorney, the Attorneys for the Government, or the United States Probation Office is only a prediction, not a promise, and is not binding on the Attorneys for the Government, the Probation Office or the Court. The Defendant further understands that the Attorneys for the Government retain the right to inform the Court of any relevant facts, to address the Court with respect to the nature of the offense, to respond to questions raised by the Court, to correct any inaccuracies or inadequacies in the presentence report, to respond to any statements made to the Court by or on behalf of the Defendant, and to summarize all evidence which would have been presented at trial to establish a factual basis for the plea, FED. R. CRIM. P. 11(f).

10.     The Attorneys for the Government agree to advise the sentencing Court of the extent and value of the Defendant's cooperation if called upon to do so by the Defendant, **DAVID MORGENSTERN.**

11. The Government agrees and stipulates that in the instant case there was no actual monetary loss and that an intended loss cannot be accurately calculated, therefore, United States Sentencing Guideline, Section 2B1.1(b)(1) is not applicable.

13. The Defendant, **DAVID MORGENSTERN**, understands that the obligations of the Attorneys for the Government within the Plea Agreement are expressly contingent upon the Defendant's abiding by federal and state laws and complying with the terms and conditions of any bond executed in this case.

14. The parties hereby agree that this Plea Agreement contains the entire agreement of the parties; that this Agreement supersedes all prior promises, representations and statements of

-5-



the parties; that this Agreement shall not be binding on any party until the Defendant tenders a

plea of guilty to the court having jurisdiction over this matter; that this Agreement may be

modified only in writing signed by all parties; and that any and all other promises,

representations and statements, whether made prior to, contemporaneous with or after this

Agreement, are null and void.


_16 APR.03_
**DATE**

_[signature]_
DAVID MORGENSTERN, Defendant


**DATE**

Jessica Salveni and
Bradley Bennett

Attorneys for the Defendant


J. STROM THURMOND, JR.
UNITED STATES ATTORNEY

BY:

**DATE**

David C. Stephens
Assistant U. S. Attorney


-6-

**EXHIBIT B –  Order From South Carolina Honoring Prosecutor Stephens' *Ex Parte* Letter Returning Case to District of South Florida**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

**FILED**

| | | |
|---|---|---|
| United States of America | ) | |
| | ) | **ORDER** |
| vs. | ) | **JAN 2 1 2003** |
| | ) | **Cr. No. 8:02-712** 17    **LARRY W. PROPES, CLERK** |
| Fred Morgenstern, | ) | [SDF No. 02-60101-Cr-WPD]    **U. S. DISTRICT COURT** |
| | ) | |
| Defendant. | ) | **Cr. No. 8:02-714** 8 |
| | ) | [SDF No. 00-6309-Cr-WPD] |
| | ) | |

| | | |
|---|---|---|
| United States of America | ) | |
| | ) | **ORDER** |
| vs. | ) | |
| | ) | **Cr. No. 8:02-713** |
| David Morgenstern, | ) | [SDF No. 02-60100-Cr-WPD] |
| | ) | |
| Defendant. | ) | **Cr. No. 8:02-715** |
| | ) | [SDF No. 00-6309-Cr-WPD] |

After reviewing the attached letter from Assistant United States Attorney David C.

Stephens dated January 17, 2003, regarding the above defendants, Fred Morgenstern and David

Morgenstern, it appears that it would be in the interest of judicial economy and in the interest

of justice that the above cases be returned to The Honorable William P. Dimitrouleas, United

States District Judge, Southern District of Florida.

The court adopts the factual statements contained in the aforementioned letter of AUSA

David C. Stephens as its findings of fact.

IT IS SO ORDERED.

_____
G. ROSS ANDERSON, JR.
UNITED STATES DISTRICT JUDGE

Anderson, South Carolina
January 21, 2002





U.S. Department of Justice

*United States Attorney*

*District of South Carolina*

| | | | |
|---|---|---|---|
| First Union Building | 151 Meeting Street | John L. McMillan Federal | 105 N. Spring Street |
| Suite 500 | Suite 200 | Building, Room 222 | Suite 200 |
| 1441 Main Street | Post Office Box 978 | 401 W. Evans Street | Post Office Box 10067 |
| Columbia, SC 29201 | Charleston, SC 29402 | Post Office Box 1567 | Greenville, SC 29603 |
| (803) 929-3000 | (843) 727-4381 | Florence, SC 29503 | (864) 282-2100 |
| FAX (803) 254-2912 | FAX (843) 727-4443 | (843) 665-6688 | FAX (864) 233-3158 |
| | | FAX (843) 678-8809 | |

Reply to: Greenville

January 17, 2003

The Honorable G. Ross Anderson, Jr.
United States District Judge
District of South Carolina
Post Office Box 2147
Anderson, South Carolina 29622

Re: United States v. David Morgenstern
    United States v. Fred Morgenstern

Dear Judge Anderson:

    In May 2002, I requested that you agree to sentence David and Fred Morgenstern pursuant to Rule 20, F.R.Cr.P. on charges to which they were pleading guilty in the Southern District of Florida. At that time, both Morgensterns were under Indictment there and David Morgenstern was under Indictment on a related case in this District. My understanding at that time was that David Morgenstern was going to cooperate and plead guilty on the South Carolina charge as well and a consolidated sentencing seemed appropriate. During that time frame, Fred Morgenstern had been incarcerated by you for contempt of court, and we anticipated that he would be in custody here at time of sentencing so it seemed equally logical to agree to sentence him here as well.

    When I asked you to agree to accept these sentencings I anticipated that, as is the norm with a cooperating defendant, sentencing would be a very simple, uncontested matter. I likewise anticipated no appellate issues which would occupy the time of our Court of Appeals. Due to several events that have occurred, it is clear that far more judicial resources may be called for than I had anticipated.

    Both David and Fred Morgenstern entered their pleas of guilty before District Judge William P. Dimitrouleas on May 21, 2002. During the plea colloquy, Judge Dimitrouleas agreed to sentencing being handled in South Carolina, but made it clear that should such not occur that the case would come back to him and that the Morgensterns



The Honorable G. Ross Anderson, Jr.
Page 2
January 17, 2003

could not withdraw their pleas of guilty. Thereafter, Judge Dimitrouleas presided over a two week trial of their co-defendant Joseph Silvestri.

After David Morgenstern entered his plea in Florida, he came to South Carolina and F.B.I. Special Agent Paul Jacobs and I began to interview him under a proffer agreement. At the beginning of the interview, we were concerned with several statements Mr. Morgenstern made about his understanding of how his sentencing would work. Of particular concern was his statement that I would be the person to decide if a U.S.S.G. Section 5K1.1 Motion would be made regarding the Florida case. I advised him that such a decision would be made by the prosecutors in Florida, however, I would advise them of any help he gave me. Mr. Morgenstern seemed disconcerted about this but proceeded with the interview and gave us a good deal of information.

During the course of our interview I told Mr. Morgenstern that in order to save him the expense of another trip to South Carolina I would try and schedule his guilty plea for the next day. At this point, Mr. Morgenstern became quite upset and informed us that he was not guilty, did not plan to plead guilty and wanted a trial. He then made numerous accusations about everyone involved in the case and how he had been misled. He also accused S/A Jacobs and me of trying to get him to perjure himself. At this point, we ended the interview. Based upon these events, I no longer consider Mr. Morgenstern to be a potential witness for the Government, even should he plead guilty.

David Morgenstern has, through his Florida attorney, lodged two objections to the Presentence Report. Both of these objections are fact specific and a ruling on them will have a dramatic impact on his guideline range. Further, based upon certain statements Mr. Morgenstern made during his aborted debriefing, I expect that he will have other objections at sentencing. In order to properly address the factual matters at sentencing, fact witnesses may have to come from Florida. Also, the Court will either have to bear the expense for transportation of the appointed lawyer from Florida or pay the expense of local counsel who will need a good deal of time to become familiar with the details of the Florida case.

Another issue that has come to the fore is that of forfeiture in connection with the Florida case. It is my understanding that Mr. Morgenstern is contesting the forfeiture of his home in Florida and that this will have to be litigated in connection with his sentencing.

Clearly there are issues here that may result in appeals to our Court of Appeals.

Fred Morgenstern has raised no objections to the Presentence Report, however, I would anticipate that the same two issues raised by David will be raised by Fred with the same problems. Further, Fred is no longer incarcerated, so that reason for handling his

The Honorable G. Ross Anderson, Jr.
Page 3
January 17, 2003

sentencing here no longer exists. Finally, as it seemed logical to me to sentence Fred here with David, it seems logical to keep them together for sentencing now.

I believe that the logic for sentencing David and Fred here on their Florida case no longer exists and I foresee a drain on judicial and other resources that I did not see when I asked that you accommodate us on this. Therefore, I would respectfully suggest that transferring the cases back to Florida would be appropriate.

I do appreciate your attention to this matter.

With best regards, I remain

Sincerely yours,

J. STROM THURMOND, JR.
United States Attorney

By: _____
DAVID C. STEPHENS
Assistant United States Attorney

cc: Hon. William P. Dimitrouleas
    Judge of the District Court
    Southern District of Florida

    J. Brian McCormick
    Assistant United States Attorney
    Southern District of Florida

    James R. Pavlock
    Senior Trial Attorney
    U. S. Department of Justice

    Scott Sakin, Esq.
    Miami, Florida
    Attorney for David Morgenstern

    Clerk of Court
    District of South Carolina
    Greenville, South Carolina

    William Norris, Esq.
    Miami, Florida
    Attorney for Fred Morgenstern

    Douglas Richardson, Esq.
    Pickens, South Carolina
    Attorney for Fred Morgenstern

    Jessica Salvini, Esq.
    Greenville, South Carolina
    Attorney for David Morgenstern

    Clerk of Court
    Southern District of Florida
    Fort Lauderdale Division
    Fort Lauderdale, Florida

