UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

DAVID MORGENSTERN,      CASE NO. 05-60961-CIV-DIMITROULEAS
                                            (00-6309-CR-DIMITROULEAS)
Plaintiff,                  (02-60100-CR-DIMITROULEAS)

vs.

FILED by _____ D.C.

UNITED STATES OF AMERICA,

OCT - 7 2005

Respondent.

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. FT. LAUD.

_____/

**FINAL JUDGMENT AND ORDER DENYING MOTION TO VACATE,
WITHDRAWING REFERENCE TO MAGISTRATE**

THIS CAUSE is before the Court on Movant's (Morgenstern) pro se June 3, 2005 Motion to Vacate [DE-1], and the Court having considered Movant's June 3, 2005 unsworn[1] Memorandum [DE-2], the Government's September 6, 2005 Answer [DE-15], and Movant's October 3, 2005 Reply [DE-21], and the Court having reviewed the Court file, having reviewed the court file and transcripts, and having presided over this case and being otherwise fully advised, finds as follows:

**BACKGROUND**

1. On October 24, 2000, the Movant was indicted in 00-6309-CR [DE-3].[2] On October 30, 2000 Bruce Udolf entered a temporary appearance on behalf of the Defendant. [CR-DE-105 and DE-

---

[1] Movant's memorandum contains a jurat that only attests to when the Motion to Vacate was given to the prison authorities. However, he does attached a declaration that contains some factual matters. The declaration also contains a qualified jurat as to all facts in the case.

[2] Movant was charged with racketeering conspiracy, in violation of 18 U.S.C. §1962(d) (Count I); money-laundering conspiracy, in violation of 18 U.S.C. §1956 (h) (Count 14); and money laundering, in violation of 18 U.S.C. §1957 (Counts 16-45, 48-49) (CR-DE-318). Pursuant to a written plea agreement, movant pled guilty to Count 14 of the indictment, as well as to an information (02-60100-CR-Dimitrouleas) charging him with one count of interstate and foreign travel or transportation in aid of racketeering enterprises, in violation of 18 U.S.C. §1952 (CR-DE 998, 1050).

403, p. 2]. On November 6, 2000, the Movant requested more time to retain counsel. [CR-DE-203]. On November 13, 2000, the arraignment was reset to November 27, 2000 [CR-DE-222]. On November 27, 2000, the Movant again requested more time to retain counsel. [CR-DE-249]. On December 11, 2000, the Movant requested further time to obtain counsel. [CR-DE-262]. On December 15, 2000, the Movant requested court-appointed counsel. [CR-DE-273].

2. On December 20, 2000, Ana Jhones was appointed to represent the Movant [CR-DE-286] and [CR-DE-307]. The notice of appearance was filed on January 9, 2001. [CR-DE-299].

3. On January 30, 2001, a superceding indictment was returned. [CR-DE-318]. On February 6, 2001, the Movant's arraignment was reset to February 12, 2001. [CR-DE-326]. On February 9, 2001, the trial was set for February 11, 2002. [CR-DE-347]. An authorization to purchase discovery was entered on April 19, 2001. [CR-DE-407]. On August 14, 2001 a second superceding indictment was returned. [CR-DE-517]. On September 25, 2001, the trial was set for February 11, 2002. [CR-DE-649]. On October 31, 2001, there is an indication that Ms. Jhones had moved to withdraw from representing movant. [CR-DE-725].

4. On December 3, 2001, Scott Sakin was appointed to represent the Movant. [CR-DE-761].

5. On January 24, 2002, Sakin filed a Motion to Continue the Trial. [CR-DE-826]. The next day, Movant sent a nineteen (19) page memorandum to trial counsel detailing his dissatisfaction with counsel. [DE-2, Ex. 2]. The trial was continued until May 6, 2002.

6. On March 5, 2002, Judge Seitz transferred this case to the undersigned. [CR-DE-891]. On April 23, 2002, the Movant filed a pro se motion to continue the trial. [CR-DE-956]. The next day, Movant wrote a letter to counsel complaining about counsel's preparation for trial. [DE-2, Ex. 3]. On May 2, 2002 a continuance was granted until May 20, 2002. [CR-DE-971]. On the morning

of May 21, 2002, it was announced that Movant would plead guilty pursuant to Rule 20. The court was concerned about a plea not occurring in South Carolina. It was then agreed that this court could take the plea and transfer the case to South Carolina, but if the South Carolina judge would not take the case, then it would be disposed of in Florida. [CR-DE-1281, pp. 4-5].

7. In the afternoon, on May 21, 2002, the Movant pled guilty to Count Fourteen (14) of the superceding indictment and an information, 02-60100-CR [CR-DE-997], pursuant to a plea agreement. [CR-DE-998]. On May 22, 2002, trial commenced on Co-Defendant Joseph Silvestri [CR-DE-1001]. On June 6, 2002, after a nine (9) day trial, Silvestri was convicted. [CR-DE-1039]. On June 11, 2002, after the parties agreed to waive the trial on the forfeiture count, the jury was released. [CR-DE-1040].

8. On June 19, 2002, pursuant to Rule 20, the Movant consented to a transfer of these cases to South Carolina, and the clerk transferred the case for sentencing to the District of South Carolina. [CR-DE-1077].

9. On January 21, 2003, the District of South Carolina transferred these cases back to this district. [CR-DE-1238 and CR-DE-1263]. The South Carolina court adopted as findings of fact that David Morgenstern had accused prosecutors of trying to get him to commit perjury and that David Morgenstern wanted to go to trial. On January 31, 2003, Movant had indicated a dissatisfaction with counsel. The Government objected to another appointment of counsel. [CR-DE-1282, p. 7]. The Court reset the hearing until February 4, 2003. On February 4, 2003, the Court granted Movant's request to appoint new counsel. [CR-DE-1256]. The Court warned movant that his moving to withdraw his plea could affect his chances of receiving acceptance of responsibility consideration. [CR-DE-1283, pp. 4-5]. The Court gave the Movant until March 14, 2003 to file a Motion to

Withdraw his Plea. [CR-DE-1259].

10. On March 14, 2003, Movant filed a Motion to Withdraw Plea. [CR-DE-1301]. Defendant also filed a Declaration on March 14, 2003 [CR-DE-1302] in which he swore that:

   A. He was coerced into involuntarily pleading guilty (page 2).

   B. He was intimidated into pleading guilty. (page 3).

   C. That the South Carolina Court acted illegally in reversing its acceptance, under Rule 20 (page 12). (But see Rule 20(c), Federal Rules of Criminal Procedure requiring a return if the Defendant pleads not guilty; here Defendant clearly wanted to withdraw his plea.)

   D. He lied to the court because his lawyer was not ready to go to trial the next day. (page 23).

   E. He was ill and taking 110 mg of oxycontin (page 25). ( But see (CR-DE-1050, pp. 44-45).)

   F. The Court told him to sit down, keep quiet, and let Mr. Sakin represent him. (page 45).

   G. Mr. Sakin told him to answer every question yes. (page 47).

11. Movant asked to withdraw his plea because he did not receive effective assistance of counsel from Mr. Sakin.

12. Movant claimed that he was coerced into pleading guilty. Certainly, a coerced plea is a fair and just reason to allow a withdrawal of a plea. United States v. Gwiazdzinski, 141 F. 3d 784, 787-88 (7th Cir.), cert. denied, 119 S. Ct. 186 (1998). However, a defense counsel's blunt rendering of an honest, but negative assessment of the Defendant's chances at trial, combined with advice to

pled guilty does not constitute coercion. United States v. Juncal, 245 F. 3d 166, 172-73 (2d Cir. 2001). The Movant also complained that his case was returned from South Carolina. However, he never had an absolute right to be sentenced in South Carolina on these Florida charges. Moreover, Rule 20(c) Federal Rules of Criminal Procedure contemplates a return to Florida because of a not guilty plea. The Movant's motion to withdraw plea was the functional equivalent of a not guilty plea.

13. The court considered the plea colloquy and the written plea agreement, [CR-DE-998], which contained an appeal waiver. (paragraph 14).

14. A review of the plea colloquy [CR-DE-1050] revealed the following:

A. The Movant stated he was pleading guilty (pages 3-4, 11, 23, 39 and 73) and throwing himself on the mercy of the court (pages 3-4, 11, 23 and 39). He stated he was pleading guilty because he was guilty (page 47). He admitted to committing the acts in the two charges (page 70). He knew that by pleading guilty he was giving up all defenses (page 70). He was told that the guideline range could not be determined until the time of sentencing (page 8). He knew that the sentence could be different from any estimate that his lawyer had given him (page 9). He was told that if he received a higher sentence, that would not be a ground to withdraw his plea (page 9). Finally, he was told that the court could depart upward from the guidelines, and that would not be a ground to withdraw his plea (page 10).

B. The Movant fully understood what was going on (page 73). There was nothing that prevented him from understanding the plea (page 45). He was not under the influence of drugs or intoxicants (pages 44-45). He agreed that there was nothing wrong with him mentally or physically which would prevent him from understanding the proceeding. (page 45). He understood

the Court (page 45). He was in full possession of his faculties (page 45). He was OK to make this important decision (page 44). He did not need any more time (pages 22, 46-48, 50-51). No promises had been made (page 46). There were no other aspects of the plea negotiations (page 39-40). He made a decision that he was willing to live with (pages 62-63). Consequently, the Court found him to be alert and intelligent and that he freely and voluntarily entered his plea of guilty (pages 72-74).

       C. The Movant waived any complaint about his case not going to South Carolina (page 4). The defendant was told that if the South Carolina judge did not want to take this case, that the sentencing would be done by the undersigned (pages 5, 19, 21). The Court told the Movant that if he was not sentenced in South Carolina that it would not be a ground to withdraw his plea (pages 5, 11). He was told that these pleas were not contingent on other pleas occurring in South Carolina (pages 11-12). He was told that the case was closed, only sentencing was left (page 12). He understood that the negotiations could break down, not due to his fault, but due to the South Carolina prosecutor's scuttling the negotiations (pages 20-22). Because the South Carolina judge could have initially rejected the transfer and the case would have remained in Florida for sentencing, the Movant could show no prejudice in the South Carolina judge initially accepting then later returning the case to Florida for re-sentencing.

       D. The Movant stated that he did not need any more time to talk with his lawyer (pages 47-48). He stated that he had patched up any difference with Mr. Sakin, that he was okay with him and that they had no problem (page 73). He was making a decision that he was willing to live by and realized he could not later complain that his lawyer was no good (pages 62 and 63). He realized he was not giving his lawyer a chance to finish any investigation (page 63). He was giving up any and all defenses, including giving up his argument that Mr. Sakin was not ready for trial

(pages 71-72). He was giving up his right on appeal to say that the undersigned was not fair (page 61). The Movant was told that there would be no wiggling out of the plea later if the Court were satisfied that the decision to plead guilty was made freely and voluntarily (page 6). At the end of the colloquy, the Movant declined an opportunity to say anything else (pages 76-77).

      E. Movant acknowledges that the motion for substantial assistance was to be made in the sole and unreviewable judgment of the prosecutor (page 37). He was told that absent a finding of bad faith or unconstitutional grounds that the court could not grant a downward departure because of substantial assistance without a motion being filed (page 37). Finally, he was told that the Court's refusal to grant a motion for substantial assistance would not be a ground to withdraw his guilty plea. (page 38).

      F. Movant was told on a number of occasions that he would not be able to withdraw his plea (pages 5, 9, 10, 11, 23, 32, 33, 35, 36 and 38).

15. The Court concluded that there was nothing in the record to indicate that the Movant did not understand his rights. United States v. Goodwin, 202 F. 3d 969, 972 (7th Cir.) cert. denied, 120 S. Ct. 2023 (2000). There was no serious contention that the Defendant was innocent of this crime. United States v. Nagra, 147 F. 3d 875, 880 (9th Cir. 1998).

16. Moreover, the Court concluded that the Movant ought to be bound by the answers given to this Court. United States v. Alegria, 192 F. 3d 179, 186 (1st Cir. 1999); U.S. v. Padilla-Galarza, 351 F. 3d 594, 598 (1st Cir. 2003); United States v. Torres, 129 F. 3d 710, 716 (2d Cir. 1997); United States v. Schuh, 289 F. 3d 968, 975 (7th Cir. 2002). There are no extraordinary circumstances that cause this Court to conclude that Movant's allegations are not palpably incredible or patently frivolous and false. U.S. v. Lemaster, 403 F. 3d 216, 221-22 (4th Cir. 2005).

17. There was no showing that the Defendant would have prevailed had he gone to trial. United States v. Gray, 182 F. 3d 762, 767 (10th Cir. 1999).

18. The real question was whether the Movant's plea was made voluntarily, knowing and intelligently. United States v. Chubbuck, 252 F. 3d 1300, 1302 (11th Cir. 2001), cert. denied, 122 S. Ct. 1360 (2002). The Court had made that finding. Nothing caused the Court to change that conclusion. A guilty plea is a solemn act that should not be set aside lightly. United States v. Embrey, 250 F. 3d 1181, 1183 (8th Cir. 2001) cert. denied, 123 S. Ct. 1642 (2003).

19. The Court considered four (4) factors in deciding whether there was a fair and just reason to withdraw a plea,[3] and the Court properly denied the Motion to Withdraw the Plea. [CR-DE-1310].

20. On April 3, 2003, this Court denied Movant's Motion for Rehearing. [CR-DE-1335].

21. On April 16, 2003, Movant requested specific performance of his plea agreement. [CR-DE-1349]. He wanted a substantial assistance motion. The Court denied the motion on April 18, 2003. [CR-DE-1355 and 1358].

22. On April 17, 2003, Co-Defendant Fred Morgenstern filed a Motion For Recusal [CR-DE-1353]. Movant adopted that motion, and the Court denied it on April 18, 2003 [CR-DE-1355 and 1360].

23. On April 18, 2003, Movant was sentenced to fifteen (15) years in prison. [CR-DE-1363]. The guideline range was 168-210 months [CR-DE-1424, p. 58]. Attorney McComb adopted the prior arguments of counsel for Fred Morgenstern and contended that the guidelines should be scored three levels lower, starting at Level 17 instead of Level 20. [DE-1424, pp. 21-25]. The court

---

[3]The Court told Movant that he was trying Co-Defendant Silvestri the next day and the Court would try Movant at the same time. [CR-DE-1050, p. 20].

overruled the objection. The Government refused to move for substantial assistance under Section 5K1.1 because Movant had disavowed his guilty plea, obstructed justice,[4] provided Florida prosecutors very little assistance, given South Carolina prosecutors minor assistance, lacked credibility to be used as a witness in South Carolina and he was not forthright in his interviews. (CR-DE-1424, pp. 59-60). The Court found no bad faith or unconstitutional grounds and denied specific performance. [CR-DE-1424, p. 65]. Moreover, even if the Government had filed a substantial assistance motion, there is no showing that this Court would have granted it.

24. On March 9, 2004, the Eleventh Circuit Court of Appeals affirmed, finding that the Court did not abuse its discretion by denying Movant's Motion to Withdraw Plea.[5] [CR-DE-1525]. Appellate counsel apparently did not raise the guidelines issue of Level 17 rather that Level 20. However, appellate counsel for Fred Morgenstern raised this issue, but the Eleventh Circuit refused to address it because of the appeal waiver. Since, David Morgenstern had the same appeal waiver, [CR-DE-998, para.14], one must conclude that had his appellate counsel raised this scoring issue, the result would have been the same. Additionally, the appellate court found no fault in the government's failure to move for substantial

assistance. Finally, the appellate court found no error in the court's refusal to grant a recusal. United States v. Morgenstern (David), 99 Fed. Appx. 886 (11th Cir. 2004).

25. On December 8, 2004, Movant again moved to recuse this Court. [CR-DE-1559]. That

---

[4]The Court's refusal to impose obstruction of justice points at sentencing does not make this reason one offered in bad faith. Moreover, the other reasons clearly fit within the Government's sole and unreviewable discretion.

[5]Apparently, Movant had also contended on appeal that counsel was ineffective. However, it is not clear that the appellate court necessarily decided that issue.

motion was denied on December 16, 2004. [CR-DE-1563].

## DISCUSSION

26. Movant's Motion to Vacate was received on June 15, 2005. [CR-DE-1580]. In this motion, Morgenstern complains about ineffective assistance of counsel, invalid money laundering convictions, and United States v. Booker, 125 S. Ct. 738 (2005).

27. First, Movant complains that he received ineffective assistance of counsel[6] during his efforts to obtain substantial assistance, during his plea and during his sentencing. His conclusory allegations are insufficient upon which to base any relief. United States v. Holmes, 406 F.3d 337 (5th Cir. 2005).

    A. Movant claims that he was without counsel at his debriefing in South Carolina. However, he does not explain how he was prejudiced or how counsel would have prevented him from alienating the prosecutor by professing his innocence and then accusing them of suborning perjury. Movant has shown no evidence that counsel's failure to attend the South Carolina debriefing affected his chances of ultimately receiving a substantial assistance motion and, more importantly, a reduced sentence. See Laird v. United States, 987 F.2d 527, 530-31 (8th Cir. 1993). Additionally, this Court need not decide whether the holding of United States v. Leonti, 326 F.3d 1111, 1117-18 (9th Cir. 2003), that defendants have a right to counsel at a post plea substantial assistance debriefing is binding on this Court and, if so, whether South Carolina counsel was ineffective in failing to anticipate a change in the law, albeit from another circuit.[7] See also, Bearse

---

    [6]During this case, Movant has not been happy about legal services of Ms. Jhones, Mr. Sakin, Mr. Sumner and Mr. McComb.

    [7]As of March 29, 2005, the Sixth Circuit had yet to decide that a defendant has a right to a attorney during debriefings in the course of attempted cooperation. Greenup v. U.S., 401 F.3d 758,

v. United States, 176 F. Supp. 2d 67, 76 (D. Mass. 2001) (misconduct, not cooperation, affected Government's refusal to file motion under Section 5K1.1).

   B. Movant claims that plea counsel gave him bad advice regarding the guidelines. Again, no prejudice is shown given Movant's answers to the Court's questions during the plea colloquy.

   C. Movant claims a lack of communication with sentencing counsel. Again, no prejudice has been shown. Movant raised all the sentencing issues and they were ruled upon.

   28. Second, Movant contends that the Money Laundering conviction must be set aside. No relief is appropriate. United States v. Martin, 320 F. 3d 1223, 1226 (11th Cir. 2003), but see U.S. v. Pizano, 421 F. 3d 707, 728 (8th Cir. 2005)(2001 amendment to U.S.S.G. § 2S1.1 "value of the laundered funds."). Moreover, Movant waived this issue by not raising it on direct appeal. Lynn v. U.S., 365 F. 3d 1225, 1233-34 (11th Cir.), cert. denied, 125 S. Ct. 167 (2004); U.S. v. Montano, 398 F. 3d 1276 (11th Cir. 2005) (Defendant must show actual innocence on dismissed charges).

   29. Third, Movant contends that his sentence violates Booker. However, Movant concedes that Booker has not been given retroactive application. Varela v. United States, 400 F. 3d 864 (11th Cir. 2005). Moreover, given the Court's imposition of the maximum sentence on a plea, it is hard to see how advisory guidelines would have benefitted Movant. On the contrary, it appears that the plea bargain's dismissal of numerous counts limited Movant's maximum criminal liability.[8]

   30. Movant has not satisfied his heavy burden to demonstrate that an evidentiary hearing is

---

767 (6th Cir. 2005)(opinion ordered depublished on June 2, 2005).

   [8]At sentencing, the Court indicated that it was exercising its discretion to sentence at the top end of the guidelines, which had been reduced because of the statutory maximum. [CR-DE-1424, p. 58]. See United States Mejia-Giovani, 416 F.3d 1323, 1327 (11th Cir. 2005).

11

warranted.  Moreno-Morales v. U.S., 334 F. 3d 140, 145 (1st Cir. 2003).

Wherefore, Morgenstern's Motion to Vacate [DE-1] is **DENIED**.

The Reference to Magistrate [DE-3] is **WITHDRAWN**.

The Clerk shall **CLOSE THIS CASE** and **DENY** any pending motions as **MOOT**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this _____ day of October, 2005.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies furnished to:

Honorable Patrick A. White, US Magistrate Judge

David A. Morgenstern
Reg. No.10453-074
c/o FCI
PO Box 1000
Petersburg, VA 23804

Michael J. Dittoe, AUSA

12